Ronald Earl COLEMAN, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2001–SC–1024–MR.

Supreme Court of Kentucky.

Dec. 19, 2002.

Rehearing Denied April 24, 2003.

Elizabeth B. McMahon, Assistant District Defender, Office of the Jefferson District Public Defender, Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Louis F. Mathias, Jr., Office of the Attorney General, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

Appellant entered a conditional guilty plea under RCr 8.09 to one count each of First–Degree Trafficking in a Controlled Substance (KRS 218A.1412),Trafficking in Marijuana (KRS 218A.1421), Possession of Drug Paraphernalia (KRS 218A.500), and Possession of a Firearm (Handgun) By a Convicted Felon (KRS 527.040). In connection with his plea, Appellant agreed both that he was a Second–Degree Persistent Felony Offender (PFO) and that he was eligible for enhanced sentencing under KRS 218A.992 as to each of the KRS Chapter 218A controlled substance offenses because he was in possession of a firearm at the time he committed those offenses. The trial court entered judgment sentencing Appellant to concurrent sentences totaling twenty (20) years, and Appellant appeals to this Court as a matter-of-right.[1] After entertaining oral argument from the parties and reviewing the record on appeal, we reverse the judgment of the Jefferson Circuit Court and remand this matter to the trial court.

## II. FACTUAL BACKGROUND

The Jefferson County Grand Jury returned an indictment against Appellant charging him with a series of KRS Chapter 218A and Kentucky Penal Code offenses after his Probation and Parole officer discovered contraband at his residence. Appellant moved the trial court "pursuant to the 4th and 14th Amendments to the United States Constitution, to Section 10 of the Kentucky Constitution, and to RCr 9.78 ... to suppress any and all fruits of any governmental search, seizure, arrest, investigative stop, and/or frisk or other governmental intrusion, including both tangible evidence and statements made by the defendant." The trial court conducted an evidentiary hearing on Appellant's motion.

Appellant's Kentucky Probation and Parole Officer, Tracy Goins ("Officer Goins"), testified at the evidentiary hearing that: (1) during the evening of November 6, 2000 she (accompanied by several other Probation and Parole Officers and members of the Louisville Police Department) conducted an "at-home visit" for the purpose of verifying Appellant's residency at the location that Appellant had identified as his home; (2) Appellant answered her knock on the door, and, after she informed him that she needed to check to see if he actually lived there, Appellant informed her that his girlfriend was undressed; (3) she explained to Appellant that she and Appellant's girlfriend were similarly equipped; (4) she then walked through the front door into the living room and the other officers followed her into the residence; (5) once inside, she discovered the strong smell of marijuana smoke; (6) she then asked Appellant to identify his bedroom, and Appellant did so; (7) the officers then conducted a search of Appellant's bedroom that uncovered—in addition to paperwork evidencing that the home was, in fact, Appellant's residence—a firearm, controlled substances, and indicia of drug trafficking; and (8) Appellant made

---

1. KY. CONST. § 110(2)(b).

statements indicating that he purchased the firearm for his own protection after an incident in which he was "jumped" and that he had been trafficking in the cocaine so that he would have money to purchase Christmas presents for his children. On cross-examination, Officer Goins testified that: (1) although four days earlier she had received drug test results showing that Appellant had tested positive for THC or marijuana, she went to the home only to verify Appellant's residence, and the positive test was not the reason for her visit; (2) she entered the home without either an arrest or search warrant or Appellant's invitation or permission; and (3) she noted the smell of marijuana only after she entered the residence.

Detective Kenton Buckner ("Detective Buckner") of the Louisville Police Department's Street Crimes Unit testified that he had accompanied Goins during the "at-home visit." During his testimony, Detective Buckner primarily addressed the circumstances surrounding Appellant's incriminating statements, and Detective Buckner gave no testimony concerning the manner in which the officers obtained entry into Appellant's home.

The parties' attorneys then argued the merits of Appellant's motion to suppress. Counsel for both Appellant and the Commonwealth agreed that a person under parole supervision in Kentucky may be searched without a warrant when his or her parole officer has a reasonable basis for the search.[2] After the trial court informed the attorneys of its preliminary conclusion that "[o]nce she's [Officer Goins] got access, she's got reason to believe that there is criminal trickery afoot," the arguments focused on the legality of Officer Goins's initial entry into the residence:

Court: Once she goes to the door and he meets her, then isn't that a verification that he is where he said he was going to be?

Comm.: No, your Honor. I think that what you would find quite often in the terms of parole is that they have—or probation—is that they live all over the place, that just because he shows up at the place he has listed on his parole application or terms and conditions with her as his most current address is not necessarily the place that he is residing. I believe that any prudent officer would want to have independent verification based on mail coming to the house, paying bills, other papers, clothes, independent verification of that nature to actually determine "Yes, this is where this person is residing, he is telling me the truth." And I believe that that was the intent of Officer Goins when she went into the house—was to actually physically verify that he was residing there and that she wasn't getting a line.

Court: Anything else you want to add, Mr. Thompson? [Appellant's trial counsel]

Appellant: Simply that I have not seen any condition that he signed saying that she can enter the house for that purpose and that it would otherwise get around the Fourth Amendment rights for protection from unreasonable search and seizure. As far as him agreeing that she can search the house simply to find out if he does in fact live there.

Court: I do believe that that is part of the parole officer's job and function to do a thorough investigation to ascertain whether an individual lives in a particular place, and I agree with the

2. *See infra* Part III(C).

prosecutor's theory—his argument, anyway—that the intent of this parole officer was to make sure that this is in actual fact where he lived. The question that I had that I am not really certain about is "Was his refusal at the door sufficient to prevent the parole officer from gaining entrance?" The prosecutor argues the totality of the circumstances. I believe the parole officer has the right to make an entry into the individual's residence. Upon, in this particular case, upon the entry she did smell marijuana which gives rise certainly to the necessary reason to conduct a search and therefore the search—I am not going to suppress the evidence that resulted from this search. I am not sure whether there was any factor involved in the fact that he had tested positive for some sort of drug several—was it marijuana, I can't remember, THC—several days before certainly alerts her to the possibility of the defendant possibly being involved in using an illegal drug or substance—certainly was enough to revoke him at that time, so your motion to suppress is denied. . . .

Appellant: So, just to clarify, your Honor. You are concluding that the Fourth Amendment, that this was a reasonable search for contraband—or for other purposes besides contraband?

Court: The question was whether the entrance was gained or not. And I am holding that the entrance was sufficient. It was not a violation of your client's Fourth Amendment rights.

. . .

Appellant: And, Judge, I don't know what the court has found on this previously, but your honor has made some specific factual arguments to support its conclusion but we would ask the court to put that in writing in its order denying this motion. And I think we brought this up previously and I think—

Court: I don't think I am going to have time to do it before the trial.

Appellant: Well, he is in prison doing another sentence, so if—

Court: I am just telling you I don't think I will have time to do it before the trial date. But I will certainly get done assuming there is an appeal.

The day following the evidentiary hearing—and a little over a month prior to the scheduled trial date—the trial court entered a brief order denying Appellant's motion to suppress, but did not set out the findings of fact and conclusions of law that formed the basis for its ruling:

This matter came before the Court on July 25, 2001, for hearing on motion of defendant to suppress evidence. The defendant was/was not present in person, and with counsel, Patrick Thompson. The Commonwealth was present by counsel, Alex Dathorne. The proceedings were reported by videotape. 30–13–01–VCR–049–A–1.

Having considered the pending motion, record, testimony offered, arguments of counsel and being otherwise sufficiently advised,

IT IS ORDERED that the motion of defendant is DENIED.

With the trial court's permission, Appellant entered a conditional guilty plea and reserved his right to appeal the trial court's ruling as to his motion to suppress. The trial court sentenced Appellant to a twenty (20) year term of imprisonment, and this appeal follows.

## III. ANALYSIS

### A. TRIAL COURT'S FINDINGS AND APPELLATE REVIEW

Appellant argues that the trial court failed to make the necessary findings of fact and conclusions of law to support its ruling denying the motion to suppress. Although we agree that written findings greatly facilitate appellate review, and we recognize that it is sometimes difficult to discern the basis for a trial court's ruling from on-the-record free-form analysis, we do not believe this is a case where we are "left in the dark" as to the basis for the trial court's ruling.[3] Appellant offered no evidence to contradict the Commonwealth's evidence at the hearing, and, in his brief to this Court, Appellant does not contest the factual testimony at the hearing. Furthermore, when considered in the context of the immediately preceding evidentiary hearing, the trial court's oral comments sufficiently display its factual findings: (1) Officer Goins went to Appellant's residence for the purpose of performing an "at-home visit" to verify Appellant's residency ("I agree with the prosecutor's theory—his argument, anyway—that the intent of this parole officer was to make sure that this is in actual fact where he lived."); (2) Appellant refused to allow Officer Goins to enter the home ("Was his refusal at the door sufficient . . . ."); (3) despite Appellant's refusal, Officer Goins entered the home, and thereafter smelled marijuana smoke which caused her to suspect that a search of Appellant's premises would yield evidence of contraband in violation of the terms of his parole

("upon the entry she did smell marijuana which gives rise certainly to the necessary reason to conduct a search.").

Given the nature of Appellant's argument on appeal, the primary issue here is a legal, rather than a factual, one—i.e., did Officer Goins's initial entry into the home without permission constitute an unreasonable search? The trial court's oral comments on the record sufficiently documented its legal conclusion that because Officer Goins was required to verify Appellant's place of residence, her entry into the home was authorized and reasonable despite the fact that Appellant did not give his contemporaneous consent ("I am holding that the entrance was sufficient. It was not a violation of [Appellant's] Fourth Amendment rights."). Thus, we believe the record below allows us to adequately review the trial court's ruling on Appellant's motion to suppress.

### B. "VISITS" AND "SEARCHES"

The United States Supreme Court has stated that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[4] And, in *Payton v. New York*,[5] the Court addressed the constitutionality of a New York statute authorizing police officers to enter private residences, by force, if necessary, without exigent circumstances or a warrant to make routine felony arrests and found the statute in violation of the Fourth Amendment:

> [A]ny differences in the intrusiveness of entries to search and entries to arrest

---

**3.** *See Lee v. Commonwealth*, Ky.App., 547 S.W.2d 792, 794 (1977) ("From the record it is impossible for us to determine whether the trial court believed the testimony of the officers or, believing that of the appellant, nevertheless concluded that no illegal search had taken place."); *Brown v. Commonwealth*, Ky. App., 564 S.W.2d 24, 30 (1978).

**4.** *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752, 764 (1972).

**5.** 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home. The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." ... [T]he Fourth Amendment has drawn a firm line at the entrance to the house.[6]

And more recently, in *Kyllo v. United States*,[7] the Court recognized the continuing sanctity of the home under the Fourth Amendment:

In *Silverman*[, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)] ... we made it clear that any physical invasion of the structure of the home, "by even a fraction of an inch" was too much, and there is certainly no exception ... for the officer who barely cracks open the front door and sees nothing but the non-intimate rug on the vestibule floor. In the home, our cases show, all details are intimate details, because the entire area is held safe from prying government eyes.[8]

The Commonwealth argues that the trial court properly concluded that Officer Goins's initial entry into Appellant's residence is analytically distinct from a "search" for Fourth Amendment purposes because Officer Goins entered the home in connection with parole regulations requiring Appellant to "[p]ermit his parole officer to visit his home and place of employment at any time."[9] As this is a question of law, we review de novo the trial court's legal conclusion that Officer Goins could enter Appellant's home without contemporaneous consent. We conclude that the trial court erred in its conclusion, and we hold that, although Appellant may have been required by the terms of his parole to permit his parole officer to visit him at his residence, Officer Goins had no lawful basis to enter Appellant's home after Appellant refused her entry.

In the outset, we note our examination of this issue is complicated somewhat by the fact that the evidentiary record in this case is almost completely barren as to the nature and scope of a garden-variety "at-home visit." Officer Goins testified that it was ordinary for a phalanx of other officers to accompany an officer performing an "at-home visit" to verify a parolee's residency, and later explained how the paperwork found in Appellant's bedroom was the type of information she used to verify residency. However, there was no testimony concerning departmental policies regarding such "at-home visits," and, although the Commonwealth has cited us to the Department's Search and Seizure policy, no party to this appeal has cited us to any written policy regarding "at-home vis-

6. *Id.* 445 U.S. at 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d at 653 (citations omitted).

7. 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001).

8. *Id.* 533 U.S. at 37, 121 S.Ct. at 2044, 150 L.Ed.2d 94 (citation omitted).

9. 501 KY. ADMIN. REGS. 1:030, § 6(1)(b) (2000).

its." While counsel for both parties at the trial court level offered their opinions as to how a parole officer goes about verifying a parolee's residency during a home visit, the evidentiary hearing itself barely touched that question.

We believe that we would completely abrogate a parolee's constitutional protections against unreasonable searches and seizures if we were to endorse the Commonwealth's view that, regardless of whether a parole officer has reasonable suspicion that the parolee has violated the terms and conditions of his parole, the "home visit" parole condition authorizes a parole officer to enter a parolee's residence for the purpose of searching for indicia of residency. After all, what is the purpose of a policy on warrantless searches if Probation and Parole officers can rummage through a supervisee's belongings under the rubric of an "at-home visit" without any suspicion—reasonable or otherwise—of wrongdoing on the part of the supervisee? Further, we find a significant difference between the language of the "I agree that I may be subject to search" condition and the condition at issue here that reads, "[t]he parolee shall ... permit his parole officer to visit his home and place of employment at any time." While the interpretation of the "the parolee shall ... permit" mandatory

parole condition is a question of first impression for this Court, other jurisdictions interpreting parallel provisions have suggested that entry into a residence in connection with a home visit requires contemporaneous consent at the time of entry[10] and have interpreted similar mandatory, "shall permit" language to mean that a person under supervision who refuses to grant consent for a home visit violates the terms of his or her release.[11]

Additionally, although the Court of Appeals for the Fourth Circuit has held that "[a] visit ... is not a search,"[12] the authority the Court cited for that proposition— and the authority cited in support of the same conclusion in the Commonwealth's brief—*Wyman v. James*,[13] held that an at-home visit in connection with a determination of continued eligibility for Aid for Families With Dependent Children (AFDC) benefits was not a "search" for Fourth Amendment purposes specifically because the AFDC recipient can deny the social worker's request for entry:

> [W]e are not concerned here with any search by the New York social service agency in the Fourth Amendment meaning of that term. It is true that the governing statute and regulations appear to make mandatory the initial home visit and the subsequent periodic "contacts" (which may include home visits)

---

**10.** *See United States v. Reyes*, 283 F.3d 446, 453 (2002) ("USPO Blomquist approached [the Defendant, Reyes] and explained that Probation was there to conduct a home visit. In response, Reyes *agreed to allow* ... the federal probation officers ... to enter the house." (emphasis added)); *People v. Nelson*, 257 A.D.2d 765, 683 N.Y.S.2d 656, 657 (N.Y.App.Div.1999) ("Zaloga conducted a home visit at defendant's residence.... Upon their *consensual entry* into defendant's residence...." (emphasis added)); *United States v. Trzaska*, 866 F.Supp. 98, 100 (E.D.N.Y. 1994) ("[The parole officer's] visit was not intended to be a search, but just a 'routine home contact' for the purpose of verifying

defendant's residence.... [The Officer] *asked* the defendant *whether* the officers *could* come inside. Trzaska *acquiesced,* and *allowed* the officers into the doorway of his one-room apartment." (emphasis added)).

**11.** *State v. Altman*, 97 Or.App. 462, 777 P.2d 969, 971 (Ct.App.1989).

**12.** *United States v. Workman*, 585 F.2d 1205, 1208 (4th Cir.1978).

**13.** 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971).

for the inception and continuance of aid. It is also true that the caseworker's posture in the home visit is perhaps, in a sense, both rehabilitative and investigative. But this latter aspect, we think, is given too broad a character and far more emphasis than it deserves if it is equated with a search in the traditional criminal law context. We note, too, that *the visitation in itself is not forced or compelled,* and that the beneficiary's denial of permission is not a criminal act. *If consent to the visitation is withheld, no visitation takes place.* The aid then never begins or merely ceases as the case may be. *There is no entry in the home and there is no search.*[14]

As such, we find Officer Goins's intrusion into Appellant's residence fundamentally different from the AFDC home visits addressed in *Wyman v. James,* and believe a closer parallel exists between the entry questioned here and the administrative inspections to which the United States Supreme Court has found constitutional search and seizure provisions applicable.[15]

Because Officer Goins entered Appellant's residence after Appellant denied her entry, we find that Officer Goins's intrusion into Appellant's residence transcended a mere visit[16] and became a search implicating the Fourth Amendment.

## C. REASONABLENESS OF SEARCH

■ Of course, the Fourth Amendment prohibits only unreasonable searches, not all searches, and thus, in addressing the reasonableness of the search conducted by Officer Goins upon her entry into Appellant's home, we must consider the officer-parolee context of that search. While residence searches generally require both probable cause and a warrant, the "special needs" of supervised release reduce probationers' and parolees' reasonable expectations of privacy. The United States Supreme Court has thus held that a warrantless search of a probationer's residence is reasonable under the Fourth Amendment when the search is supported by reasonable suspicion and authorized by a condition of probation.[17] Similarly, this

---

14. *Id.* 400 U.S. at 317–318, 91 S.Ct. 381, 385–86, 27 L.Ed.2d at 414 (emphasis added). The fact that *Wyman v. James* offers no safe harbor to the Commonwealth in this appeal is further demonstrated by the *Wyman* Court's explanation that, even if the Court assumed the consensual home visit was a search for Fourth Amendment purposes, such a search would be reasonable because: (1) administrative procedures attempted to minimize intrusions upon privacy by requiring advance notice of home visits, prohibiting forcible entry and "snooping" in the home, *Id.* 400 U.S. at 320–321, 91 S.Ct. 381, 387–388, 27 L.Ed.2d at 415–16; and (2) "The visit is not one by police or uniformed authority. It is made by a case worker of some training who[ ] .... is not a sleuth but rather, we trust, a friend to one in need." *Id.* 400 U.S. at 322–3, 91 S.Ct. 381, 388–389, 27 L.Ed.2d at 417. It is apparent that the "at-home visit" contemplated by Officer Goins far exceeded the scope of the AFDC home visits addressed by the *Wyman* Court.

15. *See Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (entry by building inspector); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (entry by fire inspector); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (entry to investigate violations of federal liquor laws); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (entry by OSHA inspector).

16. *See Diaz v. Ward,* 506 F.Supp. 226, 228–9 (S.D.N.Y.1980) (referring to the "common sense distinction between ['visits' and 'searches'] which parole officers and parolees are able to comprehend.").

17. *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 593, 151 L.Ed.2d 497, 507 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is

Court has found constitutionally permissible the warrantless searches of parolees when authorized by the terms and conditions of parole.[18] Thus, having determined that Officer Goins's entry into Appellant's home constituted a search for purposes of the Fourth Amendment, we examine the constitutionality of that search by assessing its compliance with regulations governing searches in the context of parole supervision.

■ Before beginning our analysis, however, we observe that the Commonwealth raises a series of arguments as to whether: (1) Appellant had standing to contest the search; (2) Appellant actually objected to Officer Goins's visit or merely attempted to delay her entry; and (3) Appellant's positive drug test, standing alone, gave Officer Goins a sufficient basis to search the residence. We find no merit in any of these claims. The first is squarely contradicted by the evidence that Appellant resided in the home searched.[19] The second asks us to disregard a factual finding supported by substantial evidence.[20] And the third not only asks us to substitute our judgment for that of the trial court and make our own factual finding, but to make a finding that is not just unsupported but actually contradicted by the evidence at the evidentiary hearing. Officer Goins testified that Appellant's positive drug test was unrelated to the "at-home visit" that brought her to the property, and Officer Goins was asked no questions regarding any suspicions she had as a result of the positive drug test or any other interaction with Appellant.

In accordance with its statutory authority to "adopt administrative regulations with respect to . . . conditions to be imposed on parolees,"[21] the Kentucky Parole Board has adopted regulations outlining mandatory conditions for parolees, including:

(1) The parolee shall:

. . .

(c) Not indulge in the use of a non-prescribed controlled substance.

. . .

(l) Comply with the conditions of supervision and administrative regulations prescribed by the Division of Probation and Parole and special instructions of his parole officer.[22]

And, pursuant to similar statutory authority,[23] the Justice Cabinet and the Department of Corrections have adopted regulations incorporating certain policies and procedures,[24] including those relating to searches of persons under parole supervision.[25] Specifically, Department of Corrections Policy No. 27–16–01 outlines policies and procedures relating to the warrantless search of a parolee:

---

enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). *See also Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

**18.** *Wilson v. Commonwealth,* Ky., 998 S.W.2d 473 (1999) (search based on reasonable belief); *Clay v. Commonwealth,* Ky., 818 S.W.2d 264 (1991) (search based on probable cause).

**19.** *See Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

**20.** *See Davis v. Commonwealth,* Ky., 795 S.W.2d 942 (1990).

**21.** KRS 439.340(3).

**22.** 501 KY. ADMIN. REGS. 1:030, § 6 (2000).

**23.** KRS 196.035; KRS 197.020; KRS 439.470; KRS 439.590; KRS 439.640.

**24.** 501 KY. ADMIN. REGS. 6:020E, § 1 (2000).

**25.** *Id.* at § 1(c).

If Reasonable Suspicion Exists to believe that an offender is violating a condition of supervision or the officer has possession of evidence of a violation of the terms and conditions of supervision, an officer may search without a warrant.[26]

During the evidentiary hearing conducted by the trial court, Appellant's parole officer testified that Appellant had, on multiple occasions, signed his name to and thereby acknowledged the terms and conditions of his parole. One of the conditions he acknowledged addressed his officer's right to search his person or premises:

I agree that I may be subject to search and seizure if my officer has reason to believe that I may have illegal drugs, alcohol, volatile substance, or other contraband on my person or property.[27]

Accordingly, we evaluate the merits of Appellant's constitutional challenge by determining whether the search was accomplished in accordance with the applicable policy—i.e., by assessing whether Officer Goins had reasonable suspicion "that the performance of the search may produce evidence to support [an alleged violation of Appellant's parole]."[28]

■■■■ And, because, in the trial court, the Commonwealth premised its argument for the admissibility of this evidence exclusively upon its belief that Officer Goins lawfully entered the residence in connection with an "at-home visit" we find no evidence supporting the contention that Officer Goins's entry itself was authorized under departmental policy. Specifically, the record contains no evidence that, prior to her entry into Appellant's home, Officer Goins possessed any reasonable suspicion that Appellant had given her erroneous information as to his residency—or any evidence that Officer Goins had reasonable suspicions that Appellant was otherwise violating his parole based on either Appellant's positive drug test or Appellant's refusal to permit her entry.[29] Because we find no other exception to the warrant requirement, we find that Officer Goins's entry into Appellant's home was unlawful, and we hold that the trial court should have suppressed the evidence that was

---

**26.** Kentucky Corrections Policy No. 27–16–01 (Search; Seizure; Chain of Custody; Disposal of Evidence) (hereinafter "Kentucky Corrections Search Policy") IV(1)(A)(1) at 3.

**27.** Although it is not specifically germane to the issue presented in this appeal, we observe, as one member of the United States Court of Appeals for the Sixth Circuit has, *see United States v. Payne*, 181 F.3d 781, 792–3 (Kennedy, J., dissenting), that the search policy appears to authorize searches for any violation of any parole term, while the agreement signed by Appellant encompasses only parole violations in the form of unlawful possession of contraband.

**28.** Kentucky Corrections Search Policy, *supra* note 26 at V(1).

**29.** Although Appellant's refusal may have violated the conditions of his parole release—

and, if so, Officer Goins could have arrested him on the spot, *see* KRS 439.430(1)—the refusal itself did not justify Officer Goins's search of the home. First, although she unquestionably had an opportunity to do so, Officer Goins never testified that Appellant's statements concerning his girlfriend's lack of clothing made her suspicious. Second, to the extent that the refusal itself (a violation of the terms and conditions of the parole), may authorize a search under the search policy, it would do so only if the officer reasonably suspected "that the performance of the search may produce evidence to support the alleged violation." Where the refusal itself *is* the violation, the "additional evidence" justification withers. Although no party suggests that the "search incident to lawful arrest" exception to the warrant requirement is implicated in this case, for the sake of clarity we observe that the record reflects that the search of Appellant's bedroom preceded his arrest.

discovered during the subsequent search as well as Appellant's statements relating to the contraband discovered.

## IV. CONCLUSION

For the above reasons, we reverse the judgment of the Jefferson Circuit Court and remand this case to the trial court for further proceedings consistent with this opinion.

COOPER, JOHNSTONE and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion in which LAMBERT, C.J., and WINTERSHEIMER, J., join.

GRAVES, Justice, dissenting.

Appellant was on parole from a seven year sentence for burglary and assault. Having accepted the benefits of parole, Appellant was required to follow the special instructions of his parole officer. Among other conditions, Appellant consented to visits at his home and place of employment, and consented to searches if there was reasonable belief that he had illegal drugs or contraband on his person or property. Under the circumstances of this case, the home visitation and entry was authorized as a condition of parole to which Appellant agreed. Appellant did not have the privacy expectation of an ordinary citizen.

On November 2, 2002, Appellant tested positive for marijuana, which was a violation of the conditions of his parole and which would have warranted his arrest. The officer had not seen Appellant since receiving the report of the positive drug test and had not previously visited his current address. Consequently, on November 6, 2000, the parole officer conducted a residence verification on Appellant. At the residence, the parole officer informed Appellant that she needed to confirm that Appellant actually lived there. Appellant did not object to the visit, but only informed the parole officer that his girlfriend was not clothed.

The parole officer was justified in entering the residence because verification of residence reasonably entailed entering the premises to observe indicia of Appellant's living there for some time. The record does not reflect that Appellant objected to the visit of his parole officer, but only that he stated that his girlfriend was in a state of undress, which, other than Appellant's statement, is not confirmed by the record.

Inside the residence, the parole officer noticed the strong smell of marijuana being or having been smoked. Detecting the odor of marijuana furnished a sufficient legal and factual basis for the parole officer to conduct a warrantless search.

Moreover, at the time the parole officer conducted the residence check of Appellant, she was aware that Appellant had, by using marijuana, violated a condition of his parole. That fact alone gave her reasonable suspicion, if not probable cause, that: (a) Appellant was violating his conditions of parole; (b) that Appellant may have had contraband (marijuana) in his possession; and (c) that Appellant may have been smoking marijuana at his residence to avoid detection. These facts alone gave the parole officer the reasonable suspicion necessary to enter the residence and conduct a search.

In *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the United States Supreme Court held that a probation officer could constitutionally search a probationer's home without a warrant so long as: (1) the search was pursuant to applicable state law; (2) the probationer was in the legal custody of the probation officer; (3) regulations permitted probation officers to search proba-

tioners' homes without a warrant but with a supervisor's approval; and (4) there were reasonable grounds to believe that contraband was present. If such factors were present, the search was reasonable. The Court recognized that "[a] state's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873–74, 107 S.Ct. at 3168.

Since Appellant consented to warrantless searches as a condition of parole, he should have reasonably expected a warrantless search when he engaged in conduct that gave rise to a reasonable suspicion.

The decision in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), holds that the government's interest in preventing crime, combined with a diminished expectation of privacy, requires only reasonable suspicion to make a search of the premises reasonable under the Fourth Amendment. To determine the constitutionality of the search, the Court examined its reasonableness in light of the totality of the circumstances. The fact that the probationer agreed to a search as a condition of parole was a circumstance to be considered. *Id.* at 119–120, 122 S.Ct. at 591–592.

In recognizing that a probationer is more likely to commit a crime than a non-probationer, the Supreme Court determined that a state may justifiably focus on probationers in a way that it does not on the ordinary citizen:

> The recidivism rate of probationers is significantly higher than the general crime rate. See U.S. Dept. Of Justice, Office of Justice Programs, Bureau of Justice Statistics, Recidivism of Felons

on Probation, 1986–89, pp. 1, 6 (Feb. 1992) (reporting that 43% of 79,000 felons placed on probation in 17 states were rearrested for a felony within three years while still on probation); U.S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics, Probation and Parole Violators in State Prison, 1991, p. 3 (Aug.1995) (stating that in 1991, 23% of state prisoners were probation violators). And probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply.

*Id.* at 120, 122 S.Ct. at 592.

After holding an evidentiary hearing at which there was no testimony for or by Appellant, the circuit court denied the motion to suppress. The circuit court was correct, and I would affirm the conviction.

LAMBERT, C.J. and WINTERSHEIMER, J., join this dissent.