**COMMONWEALTH OF KENTUCKY,**
Appellant,

v.

Charles JONES, Appellee.

No. 2004–SC–001017–DG.

Supreme Court of Kentucky.

Nov. 22, 2006.

As Corrected Dec. 1, 2006.

Rehearing Denied April 19, 2007.

Gregory D. Stumbo, Esq., Attorney General of Kentucky, Michael L. Harned, Esq., Assistant Attorney General, Office of Criminal Appeals, Frankfort, Counsel for Appellant.

Shannon Dupree, Esq., Assistant Public Advocate, Department of Public Advocacy, Euva D. May, Assistant Public Advocate, Appellate Division, Department of Public Advocacy, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

We granted the Commonwealth of Kentucky's motion for discretionary review of the Court of Appeals's decision, which held that a pat-down search of Charles Jones exceeded the proper bounds of the "plain feel" exception to the Fourth Amendment's warrant requirement. Because the incriminating nature of the contents of a pill bottle produced from Jones's pants pocket was not apparent until the pill bottle was removed from the pocket, we agree and, thus, affirm.

## I. FACTS & PROCEDURAL HISTORY.

Officer John Teagle arrested Jones and charged him with first-degree possession of a controlled substance, tampering with physical evidence, and resisting arrest. Jones filed a pretrial motion to suppress the evidence seized by Teagle before the arrest contending that the search and seizure did not fall within the plain feel exception. At the suppression hearing, both the Commonwealth and Jones acquiesced in the trial court's suggestion that there was no need to call Teagle as a live witness because his testimony would be in accordance with his written report. So the only facts in the record simply derive from this report.

According to the report, Teagle went to Jones's residence to serve an emergency protective order (EPO) on Jones. When he arrived, he saw a man leaning into the driver's side window of a vehicle. The man walked away when he noticed Teagle. Teagle asked him to stop and to approach. He ignored Teagle's request, kept walking away, and attempted to enter Jones's residence. Teagle put his hand on the door of the residence to keep it from closing. The man then returned to the front porch and, when asked, identified himself as Charles Jones. Teagle then informed Jones that he was there to serve an EPO on him, at which time Teagle noticed a bulge in Jones's right front pants pocket. Teagle asked Jones what was in the pocket and Jones replied, "nothing." Because the EPO stated that Jones had assaulted his wife with a handgun, Teagle made a protective pat down of Jones. The bulge felt like a prescription medicine bottle. Teagle then "asked" Jones to remove it from the pocket, and Jones reluctantly did so. When Teagle asked Jones to see the bottle, Jones stepped off the porch; opened the bottle; and flung its contents, which turned out to be Oxycontin pills, into a nearby ditch. After a struggle, Teagle arrested Jones.

At the suppression hearing, after reading Teagle's report into the record and making comments about the facts of the case against Jones, as well as other reported plain feel cases, the trial court announced that Jones's motion to suppress was denied. Neither side called witnesses nor made oral argument. More importantly, a close review of the videotape of the suppression hearing reveals that although the trial court spoke about plain feel and about Jones's case for over thirty minutes, the trial court never made any findings to support its denial of Jones's motion. And the trial court did not later issue a written order containing findings.

After his motion to suppress was denied, Jones entered a conditional guilty plea to all of the charges against him. Jones was ultimately sentenced to a maximum of one year in prison each for the possession of a controlled substance charge and the tampering with physical evidence charge, and to twelve months for the resisting arrest charge. The possession of a controlled substance sentence and the tampering with physical evidence sentences were ordered to be served consecutively with each other but concurrently with the resisting arrest sentence, for a total effective sentence of a maximum of two years' imprisonment. Additionally, that two-year sentence was ordered to be served consecutively to a one-year sentence Jones received for an unrelated offense. Jones then appealed to the Court of Appeals contending that the trial court erred by denying his motion to suppress.

A divided panel of the Court of Appeals reversed. The majority found that Teagle acted properly when he conducted a pat down of Jones because the EPO stated that Jones had used a handgun against his

wife. But the majority concluded that because it was not immediately apparent that the pill bottle in Jones's pocket contained contraband, Teagle exceeded the permissible scope of a *Terry*[1] stop and frisk when he ordered Jones to remove the pill bottle from his pocket. The dissent opined that Teagle's search of Jones was a valid warrantless search under the totality of the circumstances. Despite the fact that the issue of whether Jones consented to the search was neither argued nor ruled upon by the trial court,[2] the dissent also concluded that the warrantless search of Jones was proper because Jones had consented to the search by virtue of having assented to Teagle's request to remove the bottle from his pocket. We granted the Commonwealth's motion for discretionary review.

## II. ANALYSIS.

The Commonwealth argues before this Court that (a) the totality of the circumstances provided Teagle probable cause to believe that the pill bottle contained contraband, even though Teagle could not readily ascertain that fact by touch alone; or, in the alternative, (b) the warrantless search was valid because Jones consented to it. We disagree with the Commonwealth's first argument, and we find that the second argument has not been preserved for our review.

### A. Standard of Review.

■ Motions to suppress are governed by Kentucky Rules of Criminal Procedure (RCr) 9.78. That rule provides that a court facing a motion to suppress "shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling." When reviewing an order that decides a motion to suppress, the trial court's findings of fact are "conclusive" if they are "supported by substantial evidence."[3] Using those facts, the reviewing court then conducts a de novo review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law.[4]

The truncated suppression hearing in this case hampers our review. Although not mentioned by the parties or the Court of Appeals, our review of the suppression hearing revealed a dearth of evidence presented about the search. There were no live witnesses called and no oral argument presented. Most importantly, although the trial court spoke at length about the Fourth Amendment issues presented in Jones's case and what it perceived to be the similarities and dissimilarities to reported plain feel decisions, the trial court failed to make any findings, either orally or in writing, as is required by RCr 9.78. Rather, the trial court ended its discourse by stating that the motion to suppress was denied "for the reasons the court has expressed in this ruling from the bench."

■ RCr 9.78 requires a trial court to hold an "evidentiary hearing" before resolving a motion to suppress. Therefore, both Jones and the Commonwealth had the right to introduce evidence for or against Jones's motion.[5] But Jones has

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. In fact, only one sentence of the Commonwealth's thirteen-page brief to the Court of Appeals is devoted to the issue of consent.

3. RCr 9.78.

4. *See, e.g., Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998).

5. *See* BLACK'S LAW DICTIONARY 738 (8th ed.2004) (defining evidentiary hearing as "[a] hearing at which evidence is presented, as

not claimed error resulting from the trial court's failure to permit him to introduce evidence in support of his motion to suppress. And Jones stipulated that Teagle would testify in accordance with his written report and made no objection to the adequacy of the proceedings. So we are constrained to find that Jones has waived this issue, and we decline to rule on our own motion that Jones failed to have a proper evidentiary hearing.[6]

But before we can address the merits of the Commonwealth's arguments, we must first decide whether the lack of specific findings by the trial court prevents us from undertaking a meaningful review of this case. Because reviewing courts are required to give great deference to the factual findings made by the trial court, it is essential that the trial court discharge its responsibility to make express findings that sufficiently resolve the legal issues presented by a motion to suppress.[7] Nevertheless, given the parties' lack of disagreement as to the pertinent facts, as evidenced by the stipulation to Teagle's report, we do not believe that this case requires remand for the entry of findings.

The lack of findings in this case makes it similar to *Coleman v. Commonwealth.*[8] In *Coleman*, we also lamented the lack of findings by the trial court; but we proceeded to review the merits of the issues, holding that:

> Although we agree that written findings greatly facilitate appellate review, and we recognize that it is sometimes diffi-

cult to discern the basis for a trial court's ruling from on-the-record free-form analysis, we do not believe this is a case where we are "left in the dark" as to the basis for the trial court's ruling. [Jones] offered no evidence to contradict the Commonwealth's evidence at the hearing, and, in his brief to this Court, [Jones] does not contest the factual testimony at the hearing. Furthermore, when considered in the context of the immediately preceding evidentiary hearing, the trial court's oral comments sufficiently display its factual findings....

> Given the nature of [Jones's] argument on appeal, the primary issue here is a legal, rather than a factual one.... The trial court's oral comments on the record sufficiently documented its legal conclusion.... Thus, we believe the record below allows us to adequately review the trial court's ruling on [Jones's] motion to suppress.[9]

Accordingly, based on its comments at the hearing, we discern that the trial court's findings would have been that Teagle had a right to pat down Jones for weapons based on the allegations in the EPO. Furthermore, based on the plain feel doctrine, Teagle had probable cause to believe that the pill bottle he discovered in the pat down was contraband based on the totality of the circumstances. Those circumstances were (1) seeing Jones leaning into the window of a parked car, (2) seeing Jones's retreat, (3) his refusal to comply

---

opposed to a hearing at which only legal argument is presented.").

**6.** *Mitchell v. Hadl,* 816 S.W.2d 183, 185 (Ky. 1991) (holding that Supreme Court rarely rules on issues not raised by parties as "[o]rdinarily, this Court confines itself rather closely to deciding only those issues which the parties present. We take the view that counsel and the courts below have sufficiently identified the issues; that we need not rede-

fine the question in the last stage of the litigation.").

**7.** *Moore v. Commonwealth,* 634 S.W.2d 426, 433 (Ky.1982) ("[t]he provisions of RCr 9.78 are mandatory.").

**8.** 100 S.W.3d 745 (Ky.2002).

**9.** *Id.* at 749 (internal footnote omitted).

with the request to stop, and (4) hearing Jones say that he had "nothing" in his pocket despite the visible bulge in the pocket. So the question before us is whether these facts fall within the plain feel exception to the warrant requirement.

## B. The Plain Feel Exception.

■ We begin our analysis by noting that the question of whether Teagle acted properly in patting down Jones is not before us. Both the trial court and Court of Appeals concluded that Teagle had a right to go to Jones's residence to serve the EPO and that Teagle had a right to engage in a protective pat down of Jones based on the EPO's allegations of violence.[10] Since Jones did not file a protective cross-motion for discretionary review of the Court of Appeals' ruling, the propriety of the pat down itself and Teagle's conduct before the pat down are not properly before us.[11] The only question that is properly before us is whether the Court of Appeals concluded correctly that the search in this case was not valid under the plain feel doctrine.

■ Under our settled jurisprudence, "[i]t is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant."[12] Among the recognized exceptions to the warrant requirement is the doctrine of plain view and its corollary, plain feel. Under the plain feel doctrine, "[w]hen a police officer lawfully pats down the outer clothing of a suspect and feels an object whose contour or mass makes its identity immediately apparent, there is no violation of privacy beyond that already permitted by the pat down search for weapons. The warrantless seizure of such materials is justified under the same principles expressed in the plain view doctrine."[13] Seizing upon the "immediately apparent" requirement, the Court of Appeals found that the plain feel exception was inapplicable because "[p]rior to inspecting the pill bottle removed from Jones's pocket, the officer had no way to know whether or not Jones had a valid prescription for the medicine in the bottle, thus the contraband nature of the item was not readily apparent."

The Court of Appeals's focus on the "immediately apparent" requirement was proper because both the United States Supreme Court and this Court have held that the incriminating nature of an object seized under both the plain view and the plain feel exceptions must be "immediately

---

**10.** *Terry,* 392 U.S. 1, 88 S.Ct. 1868; *Baker v. Commonwealth,* 5 S.W.3d 142, 146 (Ky.1999) ("[w]hen an officer is justified in believing that an individual, who is unquestionably not cooperative, may be armed, it would be clearly unreasonable to deny that officer the authority to take necessary measures to determine whether the individual is, in fact, carrying a weapon, and to alleviate the threat of physical harm.").

**11.** *Perry v. Williamson,* 824 S.W.2d 869, 871 (Ky.1992) ("[o]ur rules are specific that if the motion for discretionary review made by the losing party in the Court of Appeals is granted, it is then incumbent upon the prevailing party in the Court of Appeals to file a cross-motion for discretionary review if respondent wishes to preserve the right to argue issues which respondent lost in the Court of Appeals, or issues the Court of Appeals decided not to address. If the party prevailing in the Court of Appeals wishes further consideration of such issues along with the issues for which discretionary review has been granted, the prevailing party *must* file a cross motion for discretionary review.").

**12.** *Cook v. Commonwealth,* 826 S.W.2d 329, 331 (Ky.1992).

**13.** *Commonwealth v. Whitmore,* 92 S.W.3d 76, 80 (Ky.2002) (internal citations omitted). *See also Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

apparent." [14] But, as we recently noted, "[t]he interpretation of 'immediately apparent' has presented reviewing courts with significant difficulty." [15] And despite the courts' inability precisely to define "immediately apparent," it is clear that the phrase "immediately apparent" does not alter the fundamental issue: whether an officer contemporaneously has probable cause to believe that the object being felt is contraband, taking into account the totality of the circumstances. [16]

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." [17] Thus, in order to determine if probable cause has been shown, the "principal components" a reviewing court must examine are "the events which occurred leading up to the

stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." [18] Thus, as evidenced by the use of the adverb "immediately" to modify the adjective "apparent," probable cause must be met at the time the officer touches the item in question and post-touching conduct cannot be used retroactively to find probable cause. [19] Although an appellate court must defer to the findings of fact made by a trial court, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed [de novo] on appeal." [20] Since the trial court made no real findings of fact in this case, our review is completely de novo.

Our review of *Minnesota v. Dickerson* and *Crowder* compels us to find that Tea-

---

**14.** *Whitmore*, 92 S.W.3d at 80; *Dickerson*, 508 U.S. at 375–376, 113 S.Ct. 2130 ("[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.") (emphasis added).

**15.** *Commonwealth v. Hatcher*, 199 S.W.3d 124 (Ky.2006).

**16.** *See, e.g., Texas v. Brown*, 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (noting that phrase "immediately apparent" in plain view doctrine was an "unhappy choice of words" since it had been read improperly to require a higher degree of certainty than probable cause.); *Commonwealth v. Cullen*, 62 Mass.App.Ct. 390, 816 N.E.2d 1228, 1239 (2004) ("[u]nder both the plain view and feel doctrines, whether a thing plainly viewed or plainly felt may be constitutionally seized is to be measured by whether there is probable cause to believe in the incriminating character of the object."); *State v. Jones*, 641 So.2d 688, 690 (La.Ct.App.

1994) (holding that " '[i]mmediately apparent' requires only that the officer have probable cause to believe an item is contraband."); *Ball v. United States*, 803 A.2d 971, 975 (D.C. 2002) (" '[i]mmediately apparent' for purposes of plain feel analysis does not mean that an officer must know for certain that the item felt is contraband, only that there is probable cause to associate the item with criminal activity.").

**17.** *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**18.** *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**19.** *Commonwealth v. Crowder*, 884 S.W.2d 649, 653 (Ky.1994) (Lambert, J., concurring) ("[t]hus, to justify seizure ..., the police officer must, on discovery of an item or object on the person of a suspect, simultaneously conclude that the object is not a weapon and that it is contraband other than a weapon. Such decisions must be made instantaneously and as a part of the same thought process. No further inquiry as to the nature of the object is permitted.") (emphasis added).

**20.** *Ornelas*, 517 U.S. at 699, 116 S.Ct. 1657.

gle's search of Jones does not fall within the plain feel exception. In each of those cases, as in the case at hand, the criminal nature of the item discovered during a "plain feel" search was not readily apparent until the item was moved or manipulated by the officer.

In *Dickerson*, two police officers observed a person leaving a known crack house. Once the person saw the police, he turned and walked in the opposite direction. Their suspicions aroused, the officers stopped the person and conducted a pat down. During that pat down, the officers discovered a small lump in the suspect's jacket pocket. After squeezing and sliding the lump, the officer decided that the lump was cocaine. The Supreme Court held that the search was not justified under the plain feel doctrine because the illegal nature of the lump was only apparent after the officer manipulated it, meaning that it did not satisfy the "immediately apparent" requirement for plain feel searches.[21] Similarly, in *Crowder*, a known drug dealer was seen in an area known for drug trafficking. When the person saw the police, he walked away from them. The officers engaged in a pat down and felt what the officer believed could have been a small bindle of drugs. We ultimately held that the search was not justified under the plain feel exception because the incriminating nature of the bin-

dle was not readily apparent during the pat down.[22]

Applying *Dickerson* and *Crowder* to the case at hand compels a finding that the search of Jones does not fall within the plain feel exception. In many respects, the facts in those cases are more compelling than those found in this case because, unlike those cases, there is no suggestion in the sparse record that Jones's residence or neighborhood were either high-crime areas in general or were known specifically as being narcotics-trafficking hotspots, nor is there any indication that Jones himself was suspected of being a drug trafficker. As did the suspects in *Dickerson* and *Crowder*, Jones began to walk away once he noticed the presence of authorities. But even if Jones's retreat from Teagle is considered to be a "flight," that flight, in and of itself, is insufficient to establish probable cause.[23]

Next, we note that there is nothing inherently illegal or incriminating about leaning into a car window while talking to the driver of a vehicle. Such an action could only have been *potentially* incriminating if Teagle had testified that based on his training and experience, drug dealers frequently lean into car windows to facilitate drug transactions. However, the record contains no such observation by Teagle, nor does it contain anything showing

---

**21.** *Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130 "[i]f, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object-*i.e.*, 'if its incriminating character [is not] "immediately apparent," ' *Horton [v. California]*, 496 U.S. [128], at 136, 110 S.Ct., at 2308–the plain-view doctrine cannot justify its seizure."

**22.** 884 S.W.2d at 652 (plurality opinion).

**23.** *See, e.g., United States v. Margeson*, 259 F.Supp. 256, 265 (E.D.Pa.1966) ("flight, in

and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away from them would always be subject to a legal arrest. Such a procedure cannot be countenanced under the Fourth and Fourteenth Amendments as presently interpreted by the Supreme Court."); 6A C.J.S. *Arrest* § 35 (2006) ("[t]he flight of a suspect at the approach of a peace officer, or flight from the scene of a crime, may not in and of itself constitute probable cause for arrest.").

Teagle's level of experience and training in narcotics interdiction.

Finally, and most importantly, like the objects felt by the officers in *Dickerson* and *Crowder*, the incriminating nature of the object in Jones's pocket was not obvious until the object was manipulated or moved. As noted by the Court of Appeals, "[p]rior to inspecting the pill bottle [after it was] removed from Jones's pocket, [Teagle] had no way to know whether or not Jones had a valid prescription for the medicine in the bottle, thus the contraband nature of the item was not readily apparent." There is nothing inherently incriminating about carrying a pill bottle in one's pocket.

Moreover, although we certainly do not endorse Jones's false statement to Teagle that there was "nothing" in his pocket, such a dishonest answer is certainly less incriminating than being seen walking from a known crack house, as in *Dickerson*, or being a known drug dealer standing in the precise location where an anonymous caller had told the police the suspect used to sell drugs, as in *Crowder*.

Additionally, in *Commonwealth v. Hatcher*,[24] we recently rejected the Commonwealth's analogous claim of plain view under facts more incriminating to the suspect than those found in this case. In *Hatcher*, police responded to an anonymous claim of an allegedly abandoned minor. When they arrived at the home in question, an adolescent eventually opened the door, at which time an officer saw a pipe sitting on a table. Based on his training and experience, the officer believed the pipe was used to smoke marijuana. Because the pipe could have been legally used to smoke tobacco, however, the officer did not know the pipe was drug paraphernalia until he entered the room, picked up the pipe, and then smelled marijuana.[25] We held that the search was not valid under plain view because "[a]lthough the pipe appeared suspicious to Officer Carr, further investigation was required to establish probable cause as to its association with criminal activity, and thus it simply was not immediately incriminating." [26] In the case at hand, there was no testimony from Teagle stating that his training and experience caused him to believe the pill bottle in Jones's pocket was contraband. And, furthermore, a pill bottle is frequently and commonly used for legal purposes, unlike the special pipe in *Hatcher*, which the officer testified was widely used to smoke marijuana.[27] Thus, because the unique facts of this case are less incriminating than those we found not to constitute plain view in *Hatcher*, we cannot accept the Commonwealth's argument that Teagle's search of Jones falls under the plain feel exception.

In summary, the minimal facts in the record do not support a finding that the search in this case falls under the plain feel exception to the warrant requirement. Thus, we affirm the Court of Appeals' decision on this point.

## C. Consent.

 Like plain feel, consent is one of the established exceptions to the Fourth Amendment's warrant requirement.[28] Although it concedes that it did not raise the issue of consent to the trial court, the Commonwealth now contends that Jones consented to the search and seizure be-

**24.** 199 S.W.3d 124

**25.** *Id.* at 124.

**26.** *Id.*

**27.** *Id.*

**28.** *Cook,* 826 S.W.2d at 331.

cause he merely acquiesced to Teagle's request to remove the bottle from his pocket. Indeed, Teagle's report states that he *asked* Jones to remove the pill bottle from his pocket and that Jones reluctantly complied.

■ Ordinarily, we do not permit parties to raise new arguments on appeal.[29] In fact, this general prohibition is even more important in cases involving the voluntariness of a consent to a search because "[w]hether a consent to search was voluntarily given is a question of fact to be determined by a preponderance of the evidence from the totality of all the circumstances." [30] Accordingly, the issue of consent is a fact-intensive question that is not subject to appellate review if it is not first presented to the trial court.[31] Thus, as we recently held *Hatcher*, the Commonwealth's failure to raise the issue of consent before the trial court leaves that issue unpreserved for our review.[32]

## III. CONCLUSION.

For the foregoing reasons, the decision of the Court of Appeals is affirmed; and this case is remanded to the trial court with instructions to suppress the evidence obtained during Teagle's warrantless search of Jones.

LAMBERT, C.J.; McANULTY and ROACH, JJ., concur.

SCOTT, J., dissents by separate opinion in which GRAVES and WINTERSHEIMER, JJ., join.

SCOTT, Justice, dissenting.

Respectfully, I must dissent. Although the majority opinion espouses the Court of Appeals' ruling that Officer Teagle had a "reasonable suspicion" that the Appellee was armed and thus the *Terry* pat down was proper, it has nonetheless found, by relying on the plain feel exception to the warrant requirement, that the evidence was insufficient to support the conclusion that Officer Teagle's pat down satisfies the "immediately apparent" requirement for plain feel searches. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). Moreover, the majority characterizes Appellee's response that he had "nothing" in his pockets as being "less incriminating than being seen walking from a known crack house, as in *Dickerson*, or being a known drug dealer standing in the precise location where an anonymous caller had told the police the suspect used to sell drugs, as in *Crowder*."

**29.** *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976) ("[t]he appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court.").

**30.** *Talbott v. Commonwealth*, 968 S.W.2d 76, 82 (Ky.1998). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

**31.** *Talbott*, 968 S.W.2d at 82 ("[t]he issue [of consent] is a preliminary question to be decided by the trial judge, KRE 104(a), whose factual findings are conclusive if supported by substantial evidence. RCr 9.78[.] )"

**32.** *Hatcher*, 199 S.W.3d 124 ("[w]e note that the Commonwealth devotes a great deal of effort in this Court, as it did in the Court of Appeals, in arguing that the pipe was produced as a result of a consensual search. However, we agree with the Court of Appeals that such claim is not preserved for review. Indeed, the Commonwealth's sole theory during the suppression hearing was one of 'plain view,' and we limit our opinion herein to that context. At no point did the Commonwealth contend that Hatcher's son voluntarily consented to the search, and we do not undertake at this time to determine the [legal] validity of a minor's consent to a search of the family residence.").

I find, however, that based upon the totality of the circumstances, Officer Teagle had probable cause to seize the pill bottle.

In *Dickerson, supra*, the United States Supreme Court analogized the plain feel doctrine to the plain view doctrine in the context of a legitimate *Terry* search, opining that "[r]egardless of whether the officer detects the contraband by sight or by touch ... the Fourth Amendment's requirement that the officer have *probable cause to believe that the item is contraband* before seizing it ensures against excessively speculative seizures." *Dickerson*, 508 U.S. at 376, 113 S.Ct. at 2137 (emphasis added) citing *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (contemplating the possibility that police officers could obtain probable cause justifying a seizure of contraband through the sense of touch). Significantly, the United States Supreme Court rejected the State's argument in *Ybarra*, only because "[t]he initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous," as required by *Terry*. *Ybarra*, 444 U.S. at 92–93, 100 S.Ct. at 343.

Thus contraband may properly be seized during a *Terry* search if the item's *identity* is immediately apparent and if the officer has *probable cause* to believe the item is contraband. When considered under the totality of the circumstances, we should find that probable cause exists for the seizure of suspected contraband.

For example, in *Commonwealth v. Cullen*, 62 Mass.App.Ct. 390, 816 N.E.2d 1228, 1238 (2004), the Massachusetts Court held that while no "direct evidence" of the incriminating nature of stolen coins in the defendant's pocket was present, a "host of circumstantial evidence" provided the incriminating linkage between the coins and the burglary. Moreover, probable cause

itself is recognized as a "fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully reduced to a neat set of rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause has further been defined as a "reasonable grounds for belief, supported by *less than prima facie proof* but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990) (emphasis added). And the test for probable cause is whether "there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (emphasis added). Thus no "actual showing of [criminal] activity" is required so long as there is only a probability or substantial chance such activity has occurred. *United States v. Wright*, 16 F.3d 1429, 1438 (6th Cir.1994).

Even more persuasive is the notion that determinations of probable cause are based on the "totality of the circumstances," involving a practical, commonsense review of the available facts known to the officer at the time of the search. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. The Court of Appeals has recognized such in *Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky.App.2003), wherein we held that the probable cause standard is

[a] flexible concept[ ] to be applied in a commonsense manner based on the *totality of the circumstances* in each case. In determining the totality of the circumstances, a reviewing court should not view the factors relied upon by the police officer(s) to create reasonable suspicion in isolation but must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training.

(Emphasis added). Furthermore, the court held that " 'the likelihood of criminal

activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Id.* (quoting *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002)); *see also Commonwealth v. Banks,* 68 S.W.3d 347, 351 (Ky.2001) ("Thus, if non-threatening contraband is immediately apparent to the officer from the sense of touch while the officer is conducting a lawful pat-down search, the officer is not required to ignore the contraband and can lawfully seize it.")

The precedent set by the majority opinion in this case would require an officer, confronted with an individual suspected of being armed, to have proof beyond probable cause before seizure of suspected contraband can occur. Such a result is not only unnecessary under the Fourth Amendment, but is not required under the totality of the circumstances present in this case. Accordingly, I would reverse the decision of the Court of Appeals and reinstate the ruling of the Harlan Circuit Court.

GRAVES and WINTERSHEIMER, JJ., joins this dissent.