**Michael A. SCHOENBACHLER,**
**Appellant,**

v.

**COMMONWEALTH OF KENTUCKY,**
**Appellee.**

No. 2000–SC–0109–DG.

Supreme Court of Kentucky.

Jan. 23, 2003.

Irvin Halbleib, Jr., Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Brian T. Judy, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

A Bullitt County Circuit Court jury found Appellant guilty of Flagrant Non-support[1] and fixed his punishment at the minimum prison sentence of one year. At final sentencing, the trial court imposed judgment in accordance with the jury's verdict. In Appellant's matter-of-right appeal to the Court of Appeals, he took issue with the sufficiency of the Commonwealth's evidence. Although Appellant admitted that he had failed to make child support payments that he knew he had been ordered to pay, and further admitted that his child support arrearage exceeded ($1,000.00) dollars, Appellant argued that the trial court should have granted a directed verdict of acquittal because the Commonwealth failed to introduce sufficient evidence that Appellant reasonably could have provided the ordered support. Appellant had testified before the trial court that he was unable to meet his child support obligation because of a work-related injury he suffered in July 1994, and, as a result, he argued both in the trial court and on appeal that the Commonwealth had failed to satisfy its burden of proving beyond a reasonable doubt that he was capable of meeting his child support obligation.

The Court of Appeals panel affirmed the Bullitt Circuit Court's judgment, but the panel was divided as to the basis for that holding. The majority held that the Commonwealth was not required to introduce evidence regarding Appellant's ability to pay his child support because "the burden of proving inability to pay rests with the defense." In a separate concurring opinion, Judge Buckingham stated that the Commonwealth must prove the defendant's ability to pay as an element of the offense, but concluded that "the evidence supported the jury's determination that the appellant had the ability to reasonably provide support and failed to do so."

Appellant moved this Court for discretionary review, and we granted Appellant's motion to resolve the issue of which party bears the burden of proof as to the defendant's ability (or inability) to pay child support. At oral argument, however, the Commonwealth conceded the legal issue and agreed that KRS 530.050 requires the Commonwealth to prove, beyond a reasonable doubt, that the defendant can reasonably provide the support ordered. As we explain below in Part III(A), we agree with the parties' construction of KRS 530.050. And, we observe that the Commonwealth's concession reduces the disputed issue in the case at bar to whether the evidence at trial was sufficient to support the jury's verdict. In fact, because Appellant did not

---

1. KRS 530.050(2)

renew his motion for a directed verdict of acquittal at the close of all of the evidence, he did not properly preserve his allegation of error for our review, and the question we are asked to decide is whether the trial court's failure to grant a directed verdict of acquittal constituted a palpable error under RCr 10.26. Because we find the evidence submitted by the Commonwealth sufficient to support the jury's verdict, and we thus find no error in the trial court's failure to direct a verdict in Appellant's favor, we affirm the decision of the Court of Appeals.

## II. FACTUAL BACKGROUND

In December 1995, the Bullitt County Grand Jury returned a one (1) count indictment alleging "[t]hat beginning in December of 1990 continuing through and including December 13, 1995, in Bullitt County, Kentucky, [Appellant] committed the offense of Flagrant Nonsupport by failing to provide support for his minor children pursuant to court order and thereby accruing an arrearage in excess of $1,000.00." When the case was called for trial almost two (2) years later in September 1997, Appellant did not dispute the Commonwealth's contention that he was more than $1,000.00 behind in child support payments for his two (2) minor children from a prior marriage, and instead defended against the charge by arguing that he was incapable of making the child support payments because a work-related injury he suffered in July 1994 prevented him from working.

Appellant's former wife testified during the Commonwealth's case-in-chief as follows: (1) she and Appellant were married from May 7, 1983 to December 21, 1990; (2) during that time, she gave birth to two children of the marriage—a son born in 1983 and a daughter born in 1987—and she was awarded custody of both children when the marriage was dissolved; (3) while various orders of support were entered over the years, as of September 24, 1994, Appellant's child support obligation was $135.00 per week and the records she kept by hand reflected that Appellant, as of that date, had an arrearage of $270.00; (4) Appellant made sporadic payments totaling $2,273.00 between September 1994 and March 1995; (5) although Appellant's support obligation was reduced by the Jefferson Circuit Court to $47.34 per week in May 1995, Appellant made no payments between March 6, 1995 and the date of the indictment; (6) as a result, between September 24, 1994 and the date of the indictment, Appellant's child support arrearage grew to $3,667.00; (7) during this period of time, in a hearing before a Jefferson Circuit Court Domestic Relations Commissioner, Appellant stated that "he was doing odd and end jobs for people hanging windows, fixing doors and things of that nature and making a little bit of money here and there"; and (8) that the Domestic Relations Commissioner eventually found that, based on Appellant's testimony as to these "odd and end jobs," Appellant "should be capable of earning at least the minimum wage on a regular weekly basis" and calculated Appellant's child support obligation by imputing to him minimum wage income for a forty hour work week.

During its case-in-chief, the Commonwealth also called two (2) witnesses who testified as to Appellant's ability to perform some degree of physical labor despite his injury. Appellant's former employer, Larry Dangerfield, a contractor specializing in hotel remodeling construction projects, testified that after Appellant's "alleged injury," Appellant performed "light duty" work including driving and cleanup ("pushing a broom") duties at his former construction wages until May 1995, when he left a job site in North Carolina for a doctor's appointment, told his employer

that he would return in a week, never returned, and failed to pick up his final paycheck. According to Dangerfield, hotel remodeling projects produce ample opportunities for "light work" duties, and he had work available for Appellant during this time period. Additionally, Appellant's fourteen-year-old son testified that he had observed and/or assisted his father in a variety of physical tasks including lawn mowing (in which Appellant managed to wield a weed eater), watering and weeding a small garden, automotive repair, constructing a deck, painting Appellant's trailer, and working on various equipment from air conditioners to lawn mowers.

After the trial court denied his motion for a directed verdict of acquittal, Appellant testified in his own behalf that he suffered a shoulder injury while at work on July 8, 1994 that has left him with a great amount of pain, required repeated visits to doctors and physical therapists, and has prevented him from maintaining employment in the construction industry, his former field of work. While Appellant acknowledged that he had worked for Dangerfield after Appellant's doctor reluctantly agreed to permit him to perform "light duty," Appellant testified that he found himself unable to perform many of the allegedly light duties he was asked to do and that there was not enough cleanup work to occupy his time. According to Appellant, while he was capable of doing some minor "tinkering" around the house and performing extremely brief tasks with his "other" arm, he was unable to do so for any length of time, and frequently required assistance to complete even those small tasks. Appellant thus testified that his injury rendered him incapable of supporting himself financially through physical labor as he had prior to his injury. In fact, Appellant testified that he subsisted on one meal a day (plus coffee) and that he depended upon handouts from his family and community-based organizations to cover his living expenses. Appellant explained that he was currently enrolled in a vocational rehabilitation program in which he was learning how to work with electronics, and that he anticipated that he would be able to make a living after he graduated from that program. Upon cross-examination, Appellant acknowledged: (1) that at the time of the indictment, he was at least $1000.00 behind in his child support payments; (2) that while he had applied for positions at auto parts stores on three or four occasions, he had never applied for employment at a fast food or convenience store; and (3) that when he managed to earn small amounts of money from time to time, he had not made partial child support payments because he had other household or pain medication expenses that took priority ("[T]here is times I had the Forty–Seven Dollars that I had to readjust my priorities in order to save the roof over my head[.]")

In addition to Appellant, the defense introduced the testimony of Appellant's fiancee and Appellant's mother. Both women testified that they had observed the effect of Appellant's injury upon his ability to work and explained that Appellant was unable to perform extended physical tasks.

At the close of evidence, the trial court instructed the jury under the sole count of the indictment:

> You will find the Defendant guilty of Flagrant Non–Support under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county beginning December 1, 1990, through and including December 13, 1995, and before the finding of the Indictment herein, he persistently failed to provide support which he

could reasonably provide for his minor children;

B. That he knew he had a duty to provide such support by virtue of the Jefferson Circuit Court Orders;

AND

C. There is an accrued arrearage on the Defendant's Court Ordered support payments of $1,000.00 or more.

Each party's closing arguments focused upon paragraph A of the above instruction, and specifically, upon whether Appellant "could reasonably provide" support for his minor children. In fact, Appellant's trial counsel stated during his closing argument that "we have basically admitted numbers 'B' and 'C' ... [but] we feel that you're going to have to decide that he is not guilty on ... 'A,' " and instead argued that the jury should have reasonable doubts as to Appellant's guilt because the evidence showed that Appellant's shoulder injury prevented him from working. Additionally, the Commonwealth framed the issue for the jury as "Does the defendant have an injury that keeps him from being employed; capable of paying this child support?" and argued that Appellant had not introduced any competent medical testimony to prove his inability to work for pay in *any* capacity. The Commonwealth further emphasized the evidence in the record as to: (1) Appellant's ability to perform light duty work on Dangerfield's construction projects and the continued availability of that type of work; (2) Appellant's ability to perform odd jobs for small amounts of money, and his failure to apply any of those funds to his child support obligation; (3) the fact that Appellant had applied for positions at auto parts stores, but had not

made similar applications at fast food businesses.

After deliberating for over three hours, the jury found Appellant guilty, and, after deliberating Appellant's penalty for five minutes, apparently followed Appellant's trial counsel's advice to "at least set the sentence at the bare minimum and not any more than that." The trial court subsequently entered judgment in accordance with the jury's verdict, and, as described above in Part I, this judgment has now made its way to this Court for our review.

## III. ANALYSIS

### A. BURDEN OF PROOF

KRS 530.050(2) provides:

A person is guilty of flagrant nonsupport when he persistently fails to provide support which he can reasonably provide and which he knows he has a duty to provide by virtue of a court or administrative order to a minor or to a child adjudged mentally disabled, indigent spouse or indigent parent and the failure results in:

(a) An arrearage of not less than one thousand dollars ($1,000); or

(b) Six (6) consecutive months without payment of support; or

(c) The dependent having been placed in destitute circumstances. For the purposes of this paragraph; it shall be prima facie evidence that a dependent has been placed in destitute circumstances if the dependent is a recipient of public assistance as defined in KRS 205.010.

As KRS 530.050(2) neither explicitly nor implicitly labels the "which he can reasonably provide" language a "defense," [2] nor

---

2. In which case, the Commonwealth's burden of proof would not arise until the defendant raised the issue of his inability to pay. *See* KRS 500.070(1) ("This provision, however,

provides that the defendant may prove his inability to provide the support in exculpation of his conduct,[3] the ability to provide support is an element of the offense of Flagrant Nonsupport, and the Commonwealth thus bears the burden of proof as to that element.[4] We therefore agree with the parties that the Commonwealth had the burden of proving, beyond a reasonable doubt, that Appellant could "reasonably provide" the Court-ordered support. In this case, the burden of proof issue presents itself in the form of Appellant's allegation that the trial court erred when it failed to direct a verdict of acquittal. Before addressing this allegation of error, however, we first must consider whether Appellant properly preserved it for our review.

## B. PRESERVATION

It is black-letter law that, in order to preserve an insufficiency-of-the-evidence allegation for appellate review, "[a] defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence[.]"[5] In other words, a motion for directed verdict made after the close of the Commonwealth's case-in-chief, but not renewed at the close of all evidence—i.e., after the defense presents its evidence (if it does so) or after the Commonwealth's rebuttal evidence—is insufficient to preserve an error based upon insufficiency of the evidence.[6] In this case, Appellant moved for a directed verdict at the close of the Commonwealth's case, but did not renew the motion at the close of evidence, and Appellant admits that he failed to properly preserve the issue he presents to us.

Appellant however urges us to review the sufficiency of the Commonwealth's evidence under RCr 10.26 and alleges that the trial court's failure to direct a verdict of acquittal constituted palpable error. A palpable error is one of that "affects the substantial rights of a party" and will result in "manifest injustice" if not considered by the court,[7] and "[w]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."[8] We recognize not only that "the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magni-

does not require disproof of any element that is entitled a defense."); ROBERT G. LAWSON & WILLIAM H. FORTUNE, KENTUCKY CRIMINAL LAW, § 1–5(c)(1) at 31–33 (LEXIS 1998) (hereinafter "LAWSON & FORTUNE") *Cf. Lawson v. Commonwealth*, Ky., 53 S.W.3d 534, 546–7 (2001) (discussing "defense" to Second Degree Arson identified in KRS 513.020(2)).

3. *See* KRS 500.070(3); LAWSON & FORTUNE, *supra* note 2 at § 1–5(c)(2).

4. KRS 500.070(1) ("The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3)).''

5. *Baker v. Commonwealth*, Ky., 973 S.W.2d 54, 55 (1998) (affirming the rule announced in *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525, 529 (1977)).

6. *Id.*

7. RCr 10.26.

8. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969), *overruled in part on other grounds, Blake v. Commonwealth*, Ky., 646 S.W.2d 718 (1983).

837

tude,"[9] but also that the nature of the error alleged here is such that, if the trial court did, in fact, err by failing to direct a verdict of acquittal, that failure would undoubtably have affected Appellant's substantial rights.[10] And, we likewise observe that the trial result necessarily would have been different if the trial court had directed a verdict in Appellant's favor. Accordingly, we examine the merits of Appellant's allegation.

## C. SUFFICIENCY OF THE EVIDENCE

We review Appellant's argument under the standard articulated in *Commonwealth v. Benham:*[11]

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserv[e] to the jury questions as to the credibility

and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.[12]

■ At trial, the Commonwealth essentially conceded that Appellant suffered from a shoulder injury, but sought to prove that Appellant was capable of earning a wage despite that injury. Although Appellant maintained otherwise, the evidence permitted the jury to believe that Appellant "could reasonably provide" support for his minor children and simply chose not to do so. While the Commonwealth did not offer its own medical expert to rebut Appellant's letters from various treatment providers—clearly inadmissible, but admitted without objection from the Commonwealth—regarding Appellant's injury, the evidence permitted the reasonable inference that Appellant could perform a number of compensable tasks. Appellant's argument essentially boils down to a request that this Court accept as true his allegation that, despite his desire to provide for his children, his body was not "up to" any of the employment prospects identified. The jury,

9. *Miller v. Commonwealth,* Ky., 77 S.W.3d 566, 576 (2002). *See also id.* ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)).

10. *See Perkins v. Commonwealth,* Ky.App., 694 S.W.2d 721, 722 (1985):

Appellee argues that these [insufficiency of the evidence] errors are not preserved for our review since appellant made no motion for a directed verdict at any point during the trial. Ordinarily, we would agree with

appellee, but a conviction in violation of due process constitutes "[a] palpable error which affects the substantial rights of a party" which we may consider and relieve though it was insufficiently raised or preserved for our review. *See* RCr 10.26.
*Id.*

11. Ky., 816 S.W.2d 186 (1991).

12. *Id.* at 187. *See also Com. v. Sawhill,* Ky., 660 S.W.2d 3, 4–5 (1983) ("The clearly unreasonable test seems to be a higher standard for granting a directed verdict ... constitut[ing] an appellate standard of review."); *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530, 533 (1977).

however, was not required to accept Appellant's testimony as true, and, in fact, Appellant himself testified that there were times when he had the money to pay his child support, but paid other expenses instead. We find nothing "clearly unreasonable" about the verdict actually reached in this case and, accordingly, we find no error in the trial court's failure to direct a verdict of acquittal.

## IV. CONCLUSION

For the above reasons, we affirm the decision of the Court of Appeals.

All concur.