Richard W. **LUNSFORD**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2003–CA–001103–MR.

Court of Appeals of Kentucky.

July 9, 2004.

---

18. *Fratzke,* 12 S.W.3d at 273 (quoting *National Fire Insurance Co. v. Spain,* Ky.App., 774 S.W.2d 449, 451 (1989)).

Michael C. Lemke, Louisville, KY, for appellant.

Albert B. Chandler, III, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before GUIDUGLI, JOHNSON and MINTON, Judges.

## OPINION

JOHNSON, Judge.

Richard W. Lunsford has appealed from the final judgment and sentence of imprisonment entered by the Fayette Circuit Court on April 29, 2003, which convicted him of possession of marijuana, while in possession of a firearm,[1] and possession of drug paraphernalia, second offense.[2] Having concluded that the trial court did not err in denying Lunsford's motions for a directed verdict of acquittal, we affirm.

On March 19, 2002, at approximately 10:30 p.m., Officer James Moore and Officer Michael Carroll of the Lexington–Fayette Urban County Division of Police were dispatched to 374 Preston Avenue in Lexington, Kentucky, to investigate a call from a female in distress. Upon arriving at the scene, Officer Moore and Officer Carroll approached the front door of the residence and announced their presence. Although they received no response, Officer Moore and Officer Carroll entered the residence after Officer Moore observed a rifle lean-

---

**1.** Kentucky Revised Statutes (KRS) 218A.1422 and KRS 218A.992.

**2.** KRS 218A.500.

ing against a wall in the living room.[3] Officer Moore and Officer Carroll proceeded to search the residence for occupants and during the search they observed what appeared to be marijuana and drug paraphernalia on a coffee table in the living room. After determining that no one was present in the residence, Officer Moore contacted his supervisor, Officer Dan Fleischer, and apprised him of the situation. Officer Fleischer then contacted Detective Keith Ford, who proceeded to secure a search warrant for the premises. According to Officer Moore, he remained at the scene while Officer Carroll and Officer Fleischer canvassed the neighborhood. Approximately one and one-half hours later, Det. Ford returned with a search warrant.[4]

An ensuing search of the residence revealed five individually wrapped baggies of marijuana, several partially burnt marijuana cigarettes, digital scales, several items of drug paraphernalia, an SKS (Samozariadnyia Karabina Simonova) rifle, a .22 caliber revolver, two 20–gauge shotguns, and a flintlock derringer pistol.[5] The baggies of marijuana and digital scales were found under a coffee table in the living room. The partially burnt marijuana cigarettes were found in an ashtray on top of the coffee table and in a can located under the table. The SKS rifle was found leaning against a wall near a couch in the living room.[6] The .22 caliber revolver was found in the front bedroom along with a lockbox containing several items of drug paraphernalia.[7] The derringer pistol and 20–gauge shotguns were found in the back bedroom. The search also revealed evidence indicating that Lunsford resided at 374 Preston Avenue with Franklin.[8] A warrant was issued for Lunsford's arrest and he was taken into custody on March 27, 2002.[9] Lunsford was unarmed when he was arrested.

On May 28, 2002, Lunsford was indicted by a Fayette County grand jury and charged with, *inter alia*, trafficking in a controlled substance within 1,000 yards of a school,[10] while in possession of a firearm, and possession of drug paraphernalia, second offense.[11] Franklin was also indicted and charged with trafficking in a con-

---

3. According to Officer Moore, he noticed the rifle when he "peered" through the front door, which was cracked open.

4. During the interim, Officer Fleischer learned that Jody Franklin resided at 374 Preston Avenue. Officer Fleischer subsequently located Franklin at her place of employment and transported her back to her residence.

5. Det. Ford, Officer Moore, Officer Carroll, and Officer Fleischer all participated in the search. Sergeant Mark Simmons also participated in the search.

6. The rifle was not equipped with its standard 10–round magazine and no magazines were discovered in the residence.

7. Franklin provided the key to the lockbox.

8. The police found mail addressed to Lunsford in the residence.

9. Lunsford was arrested at his brother's residence in Lexington.

10. KRS 218A.1411. 374 Preston Avenue is located within 1,000 yards of Ewan Elementary School.

11. The indictment also charged Lunsford with receiving stolen property over $300.00 (KRS 514.110), leaving the scene of an accident (KRS 189.580) and operating a motor vehicle on a suspended license (KRS 186.620). These charges were severed from the drug charges prior to trial and are not at issue in this appeal.

trolled substance within 1,000 yards of a school, while in possession of a firearm, and possession of drug paraphernalia. Lunsford and Franklin were tried jointly before a Fayette County jury in March 2003.

Several witnesses testified on behalf of the Commonwealth at trial. Officer Moore stated that he participated in the search and he identified the SKS rifle that was seized from the living room. Officer Moore testified that the rifle was found "in close proximity" to the marijuana found in the living room. More specifically, Officer Moore opined that "you could reach both [the drugs and the rifle] at the same time if you needed to." Det. Ford testified that he obtained a search warrant for the residence based on information provided by Officer Moore and Officer Carroll. Det. Ford identified and described the various items of contraband that were seized from the residence and he opined that the evidence was indicative of drug trafficking. Det. Ford testified that during the search Franklin informed him that the guns found in the residence belonged to her two teenage sons. Sgt. Simmons opined that the items seized during the search were indicative of drug trafficking and he stated that drug traffickers typically use firearms to protect their "stash."

Special Agent Scott Teal from the Bureau of Alcohol, Tobacco and Firearms testified that the SKS rifle seized during the search was a Chinese prototype of a military rifle originally produced by the Soviets.[12] Teal explained that the weapon was not inoperable despite the fact it did not have a magazine. Teal maintained the weapon could be loaded manually and fired one round at a time. Teal opined that the weapon was not an ideal hunting rifle because, among other things, it did not have a scope and it lacked "knock down power." Teal further testified that the flintlock derringer pistol seized during the search is not considered a firearm under federal law. Teal opined that the .22 caliber revolver found in the front bedroom appeared to be inoperable due to a broken hammer.

At the close of the Commonwealth's case-in-chief, Lunsford and Franklin moved the trial court for directed verdicts of acquittal on the trafficking charges[13] on the grounds that the evidence was insufficient to support a conviction for trafficking in a controlled substance within 1,000 yards of a school, while in possession of a firearm.[14] The trial court denied both motions.

Lunsford testified in his own defense and denied that he sold marijuana. Lunsford claimed the marijuana found at his residence was solely for personal use. Lunsford explained that he consumed marijuana on a regular basis and he considered himself to be a marijuana "connoisseur". Lunsford testified that he purchased marijuana in large quantities because it was more cost-effective. Lunsford stated that on some occasions he purchased as much as four ounces of marijuana at a time. Lunsford insisted that he kept his marijuana in separate in-

---

**12.** The SKS was the predecessor to the AK–47 (Avtomat Kalashnikov) assault rifle.

**13.** Franklin also moved for a directed verdict of acquittal on the possession of drug paraphernalia charge.

**14.** Lunsford did not raise any specific arguments with respect to the firearm enhancement charge. He merely asserted that the evidence was insufficient to support the trafficking charge.

dividually wrapped baggies because it was more practical to carry smaller amounts when he was working. Lunsford claimed he used the scales to make sure he "didn't get ripped off" when he purchased large quantities of marijuana.

Lunsford testified that Franklin purchased the SKS rifle from one of his friends as a gift for her sons. Lunsford stated that he did not have a magazine for the rifle. Lunsford claimed the rifle was in the living room because he was in the process of converting it into a hunting rifle. Lunsford further testified that the shotguns seized from his residence belonged to Franklin's sons and were used for hunting. Lunsford insisted that the flintlock derringer pistol was nothing more than a "conversation piece." Lunsford claimed the .22 caliber revolver found in the front bedroom was inoperable. In closing, Lunsford testified that all of the marijuana and drug paraphernalia seized from his residence belonged to him. Franklin did not testify. Lunsford and Franklin renewed their motions for directed verdicts of acquittal at the close of all the evidence, both of which were denied.[15]

The jury acquitted Lunsford of trafficking in a controlled substance within 1,000 yards of a school, while in possession of a firearm, and convicted him of the lesser-included offense of possession of marijuana, while in possession of a firearm, and possession of drug paraphernalia, second offense.[16] On April 29, 2003, the trial court entered its final judgment and sentence of imprisonment. The trial court sentenced Lunsford to prison for one year on the conviction for possession of marijuana, while in possession of a firearm, and to one year on the conviction for possession of drug paraphernalia, second offense. The trial court ordered the sentences to be served consecutively.[17] This appeal followed.

Lunsford argues on appeal that the trial court erred by denying his motions for a directed verdict of acquittal. Lunsford contends the evidence introduced by the Commonwealth at trial was insufficient to support his conviction for possession of marijuana, while in possession of a firearm. In sum, Lunsford claims the Commonwealth failed to establish a sufficient nexus between the firearms and marijuana that were seized from his residence.[18] We disagree.

 It is well-established that in order to preserve an insufficiency-of-the-evidence allegation for appellate review, a defendant must specifically mention the error alleged in his motion for a directed verdict of acquittal.[19] Simply put, a general motion for a directed verdict of acquittal is not sufficient. A thorough review of the record indicates that Lunsford never raised any arguments with respect to the firearm enhancement charge in either of his motions for a directed verdict of acquittal. In fact, no mention was ever made of

15. Once again, Lunsford did not raise any specific arguments with respect to the firearm enhancement charge.

16. Franklin was acquitted on all charges.

17. The jury recommended that the sentences be served concurrently.

18. Lunsford does not challenge his conviction for possession of marijuana. He simply takes

issue with the firearm enhancement conviction.

19. *See, e.g., Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860, 862 (1988); and *Hicks v. Commonwealth*, Ky.App., 805 S.W.2d 144, 148 (1990).

the Commonwealth's alleged failure to establish a nexus between the firearms and marijuana seized from Lunsford's residence.[20] Consequently, the trial court was never given an opportunity " 'to pass on the issue in light of all the evidence[.]' " [21] Thus, Lunsford has failed to preserve his insufficiency-of-the-evidence allegation for appellate review.

Nevertheless, since a conviction based on insufficient evidence would undoubtedly deprive a criminal defendant of substantial due process rights,[22] we will review Lunsford's insufficiency of the evidence argument under the standard articulated in *Commonwealth v. Benham:* [23]

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a

directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserv[e] to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.[24]

KRS 218A.992 increases the penalty for drug-related offenses when the offender "at the time of the commission of the offense" was "in possession of a firearm[.]" [25] In *Commonwealth v. Montaque*,[26] the Supreme Court of Kentucky held that KRS 218A.992(1) "requires a nexus between the crime committed and the possession of a firearm." [27] The Court further held that "mere contemporaneous

---

**20.** As previously discussed, Lunsford merely asserted that the evidence was insufficient to support the trafficking charge. In addition, Lunsford offered no objection to the firearm enhancement instruction that was given to the jury.

**21.** *Schoenbachler v. Commonwealth*, Ky., 95 S.W.3d 830, 836 (2003)(quoting *Baker v. Commonwealth*, Ky., 973 S.W.2d 54, 55 (1998)).

**22.** *See Schoenbachler, supra* at 837 n. 10 (" '[a]ppellee argues that these [insufficiency of the evidence] errors are not preserved for our review since appellant made no motion for a directed verdict at any point during the trial. Ordinarily, we would agree with appellee, but a conviction in violation of due process constitutes "[a] palpable error which affects the substantial rights of a party" which we may consider and relieve though it was insufficiently raised or preserved for our review' ")(quoting *Perkins v. Commonwealth*, Ky.App., 694 S.W.2d 721, 722 (1985)).

**23.** Ky., 816 S.W.2d 186 (1991).

**24.** *Schoenbachler*, 95 S.W.3d at 837 (quoting *Benham*, 816 S.W.2d at 187).

**25.** The statute provides, in relevant part, as follows:

(1) Other provisions of law notwithstanding, any person who is convicted of any violation of this chapter who was at the time of the commission of the offense in possession of a firearm, shall:

(a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or

(b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

**26.** Ky., 23 S.W.3d 629 (2000).

**27.** *Id.* at 632. The Court reasoned that "[r]equiring proof of a nexus between the commission of the offense and the possession of the firearm reduces or eliminates [the risk of punishing non-criminal activity] without lessening the statute's legitimate penal purpose." *Id.*

possession of a firearm is not sufficient to satisfy the nexus requirement." [28]

Montaque had been arrested after police discovered several items of contraband in an apartment she occupied with Ronald Johnson while executing a search warrant.[29] The police subsequently found an unloaded semi-automatic handgun in the trunk of a Cadillac parked outside her apartment. The police found the gun wrapped in a plastic shopping bag along with two ammunition clips and a box of loose shells. The police did not find any drugs in the Cadillac. Montaque claimed she had borrowed the Cadillac from Johnson's mother. Montaque insisted, however, that she was not using the Cadillac at the time of the search because she had recently purchased a car of her own. Montaque further claimed that the gun belonged to a friend who had asked her "to store it for him." [30] A Jefferson County jury convicted Montaque of, *inter alia*, trafficking in a controlled substance in the first degree (cocaine),[31] while in possession of a firearm.

On appeal, the Supreme Court held that the Commonwealth had failed to establish a nexus between the contraband that was seized from Montaque's residence and the gun that was found in the Cadillac. The Court stated that "when it cannot be established that the defendant was in actual possession of a firearm or that a firearm was within his or her immediate control upon arrest, the Commonwealth must prove ... some connection between the firearm possession and the crime." [32] The Court noted that the gun was not in "Montaque's actual possession or within her immediate control when she was arrested[,]" and "there [was] nothing to connect the gun or the Cadillac to the possession or the trafficking of drugs." [33] The Court stated, however, that "if drugs had been found in the Cadillac along with the gun, then a sufficient connection would have been established to create a question of fact for the jury." [34]

In the case *sub judice*, the SKS rifle was found in close proximity to the drugs, which Lunsford admitted to possessing. Lunsford's own testimony, coupled with that of Officer Moore, established that the gun was present and within his immediate control during the commission of the offense. "Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense[,]" and "[t]he government does not have to produce any further evidence establishing a connection between the weapon and the offense" [emphasis original].[35] In sum, we are persuaded that the evidence was sufficient to allow a rea-

---

**28.** *Id.*

**29.** *Id.* at 630. Specifically, the police found approximately nine ounces of cocaine, digital scales, knives, cellular phones and plastic bags in the apartment.

**30.** *Id.* at 631.

**31.** KRS 218A.1412.

**32.** *Montaque*, 23 S.W.3d at 633.

**33.** *Id.*

**34.** *Id.*

**35.** *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991)(construing § 2D1.1(b)(1) of the United States Sentencing Guidelines). This presumption is not conclusive, however, as the defendant may introduce evidence to the contrary which would create an issue of fact for the jury to resolve. *Montaque*, 23 S.W.3d at 633.

sonable juror to infer that a nexus existed between the SKS rifle seized from Lunsford's residence and the drug offense for which he was convicted.[36] Consequently, the trial court did not err by denying Lunsford's motions for a directed verdict of acquittal.

Based on the foregoing reasons, the final judgment and sentence of the Fayette Circuit Court is affirmed.

ALL CONCUR.

36. *Id.*