# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

FINAL

2014-SC-000007-MR

DATE 11-13-14 [signature]

SHEMEKO HOWARD                                                    APPELLANT


ON APPEAL FROM FAYETTE CIRCUIT COURT
V.          HONORABLE ERNESTO SCORSONE, JUDGE
NO. 12-CR-01221


COMMONWEALTH OF KENTUCKY                                          APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

A jury convicted Shemeko Howard (Howard) of assault in the first degree, tampering with evidence, and with being a persistent felony offender in the second degree (PFO II). Following the jury's finding of guilt, Howard entered a guilty plea in exchange for a minimum sentence, which she received. On appeal, Howard argues that she was entitled to directed verdicts on the assault and tampering with evidence charges. The Commonwealth argues that Howard forfeited her right to appeal when she pled guilty. In the alternative, the Commonwealth argues Howard was not entitled to directed verdicts. For the following reasons, we affirm.

**I. BACKGROUND.**

On August 5, 2012, Howard was standing outside the Speedway gas station/convenience store on South Broadway in Lexington, Kentucky, arguing on the telephone with her husband, Ronald Gentry (Gentry). While still

arguing with Gentry, Howard went into the store and purchased a pack of cigarettes. Christopher Mayfield (Mayfield) who was standing in line behind Howard, asked her for a date.[1] Howard declined Mayfield's invitation, left the store, and Mayfield followed.

By the time Howard got outside the store, Gentry had arrived and he and Howard began arguing. At some point Gentry pushed Howard to the ground. Mayfield and a friend of his intervened, and Mayfield helped Howard get up from the ground. Mayfield, his friend, and Gentry then began arguing. Howard got between Mayfield and Gentry, and Mayfield, who was attempting to hit Gentry, hit Howard in the mouth, knocking her to the ground again. Howard then got up; got into the Cavalier that Gentry had driven to the Speedway; and began driving erratically around the Speedway lot in an attempt to hit Mayfield. Howard did not hit Mayfield, but she did hit a guard rail, severely damaging the Cavalier.

In the meantime, Mayfield and his friend had started walking to an apartment building across the street from the Speedway. Howard got out of the Cavalier, got into the car she had driven to the Speedway, a Charger, ran a red light, struck Mayfield, and then struck a parked car. Howard then returned to the Speedway, picked up Gentry, and left the area.

Emergency personnel treated Mayfield at the scene and transported him to the hospital where he received treatment for a subdural hematoma and

---

[1] We note Howard stated in her brief that Mayfield asked her if he "could get with her." However, the exact wording of Mayfield's request is irrelevant.

several fractured bones. Mayfield continues to suffer from significant impairment to his left hand and from vision and memory loss.

Prior to trial, Howard and the Commonwealth agreed that Howard was entitled to present a defense of extreme emotional disturbance. She did so, testifying that she had been a victim of domestic violence throughout her two and a half years of marriage to Gentry; that Mayfield had hit her harder than she had ever been hit; and that she "blacked out" and had no memory of any events after she wrecked the Cavalier. However, Howard admitted that she had been trying to hit Mayfield with the Cavalier. The jury rejected Howard's defense and found her guilty of all charges.

Before the penalty phase of the trial began, Howard, who was facing a possible life sentence, agreed to plead guilty to being a PFO II and waived jury sentencing on the assault and tampering charges in exchange for minimum consecutive sentences totaling twenty-one years.[2] When questioned by the court, Howard's counsel stated that Howard understood the offer and was following his advice.

The court did not conduct a plea colloquy; however, Howard completed and signed a Waiver of Further Proceedings with Petition to Enter Plea of Guilty form. In that form she affirmed: she was not under the influence of alcohol or

---

[2] We note that the record is unclear regarding this plea. In the Waiver of Further Proceedings with Petition to Enter Plea of Guilty it appears that Howard pled guilty to the assault, tampering, and PFO II charges. The court's Judgment on Guilty Plea states that Howard pled guilty to PFO I and waived jury sentencing on the assault and tampering charges. The court's Final Judgment and Sentence of Imprisonment states that Howard pled guilty to the assault, tampering, and PFO II charges. The Commonwealth has argued this matter on appeal as if Howard pled guilty to the assault, tampering, and PFO II charges.

narcotics; she was not suffering from or being treated for any mental condition; she had been advised that she could receive a sentence of life in prison; she was not acting under force, duress, or coercion; she fully understood the proceedings; she understood she was waiving her constitutional rights, including the right to appeal; and her counsel had "done all that anyone could do to counsel and assist" her. After Howard completed the form, the court accepted her plea. Approximately six weeks later, the court entered judgment imposing a sentence consistent with the agreement.[3] We set forth additional background information as necessary below.

## II. ANALYSIS.

The Commonwealth argues that we need not address the substance of the issues Howard has raised on appeal because she waived her right to appeal when she entered her plea. We agree with the Commonwealth that Howard is entitled to waive "[a]ny right, even a constitutional right, . . . if that waiver was made knowingly and voluntarily." *Johnson v. Commonwealth*, 120 S.W.3d 704, 706 (Ky. 2003), *citing United States v. Ashe*, 47 F.3d 770, 775–776 (6th Cir.1995). However, the record must contain evidence that any such waiver was in fact knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 244 (1969).

In *Johnson*, as here, the defendant entered a guilty plea following the jury's finding of guilt. When Johnson appealed, the Commonwealth moved to

---

[3] We note for the sake of completeness that the trial court ran Howard's state sentence in this case concurrently with a sentence Howard had previously received in a federal case.

4

dismiss the appeal based on Johnson's waiver of his right to appeal. We remanded the case to the trial court so it could determine if Johnson's waiver was knowing and voluntary. The trial court made that finding after specifically verifying that Johnson understood he was waiving his right to appeal. Based on the trial court's finding that Johnson's waiver had been knowing and voluntary, we dismissed his appeal. *Id.* at 705-06.

Although *Johnson* is instructive, it is not dispositive. "Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 565 (Ky. 2006). In *Johnson*, unlike here, the trial court determined through questioning that Johnson understood he was waiving his right to appeal, and we implicitly determined that was sufficient to meet due process requirements. However, the court herein did not ask Howard if she understood the ramifications of her plea or if her plea was voluntary. Absent an on the record plea colloquy and determination by the trial court that Howard knowingly and voluntarily entered her plea, we cannot say that Howard was afforded all the process she was due. Therefore, we cannot say Howard waived her right to appeal by entering a plea of guilty, and we must address the merits of her appeal.

a.    **The Trial Court did not Err in Failing to Direct a Verdict on the First Degree Assault Charge.**

Howard made a motion for a directed verdict at the end of the Commonwealth's case. Relative to the first-degree assault charge, Howard

5

argued that the Commonwealth had failed to prove she had caused a serious physical injury to Mayfield. The court overruled that motion.

As we understand it, Howard is now arguing the court should have *sua sponte* directed the jury to find she was acting under extreme emotional disturbance. This issue is unpreserved; therefore, we review it for palpable error. Kentucky Rule of Criminal Procedure 10.26. Palpable error is an irregularity which affects a party's substantial rights and, if not addressed on appeal, results in a manifest injustice to the party. *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 837 (Ky. 2003).

To be entitled to a finding of extreme emotional disturbance, a defendant must show she was acting "uncontrollably from the impelling force" of a "mind so enraged, inflamed, or disturbed as to [have] overcome [her] judgment." *See McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986). To be entitled to a directed verdict, a defendant must show that there was not sufficient evidence to "induce a reasonable juror to believe beyond a reasonable doubt that [she] is guilty." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

In support of her argument that she was acting under extreme emotional disturbance, Howard notes that: she had no reason to assault Mayfield, because she met him just seconds before the fight with Gentry began; Mayfield hit her in the mouth harder than she had ever been hit; she had been a victim of physical and psychological domestic violence; and her testimony that she "blacked out" after wrecking the Cavalier and had no memory of driving the Charger or of hitting Mayfield was unrebutted. We agree with Howard that the

6

preceding evidence could support a finding by a jury that Howard was acting under extreme emotional disturbance. However, that evidence did not compel such a finding, particularly in light of the following evidence. Howard intended to hit Mayfield with the Cavalier and drove around the parking lot attempting to do so, only stopping when she wrecked that car. She then got out of the Cavalier, got into the Charger, maneuvered around the Cavalier, paused to let traffic on the street pass, and then drove across the street where she hit Mayfield. After hitting Mayfield, Howard returned to the Speedway to get Gentry and, later that day, called the police to see about retrieving the Cavalier. From this evidence a reasonable juror could infer that Howard, although perhaps acting with a malicious purpose, was in control of her faculties and knew what she was doing. Therefore, the trial court's failure to direct the jury to find that Howard was acting under extreme emotional disturbance was not error, palpable or otherwise.

**b.     The Court did not Err When It Denied Howard's Motion for Directed Verdict on the Tampering With Evidence Charge.**

During trial, witnesses testified that, following Howard's collision with Mayfield and the parked car, the Charger's air bags had deployed and its windshield had been broken. The police did not recover the Charger until approximately three weeks after the incident. By that time, the windshield and air bags had been repaired, leading to the tampering with evidence charge.

Howard moved for directed verdict on the tampering with evidence charge, noting that the Charger did not belong to either her or Gentry. Furthermore, Howard noted the Commonwealth had put forth no evidence

7

establishing where the Charger had been during those three weeks or who had possession of it. The Commonwealth argued the Charger had been damaged, Howard was in control of it at that time, the Charger had been repaired, and Howard was in control of the Charger and was in the process of replacing a headlight when the police found it. The court, in denying Howard's motion, noted that a reasonable juror could infer from the facts that Howard had repaired the Charger.

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). In reviewing a trial court's denial of a motion for a directed verdict we must determine "if, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.*

Although there was not a significant amount of direct evidence that Howard tampered with evidence, the Commonwealth presented sufficient circumstantial evidence to support a finding of guilt on the tampering with evidence charge. *See Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000) ("[A] [c]onviction can be premised on circumstantial evidence of such nature that, based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt.") Therefore, we hold that the trial

8

court's denial of Howard's motion for directed verdict on the tampering with evidence charge was not error.

### III. CONCLUSION.

For the preceding reasons, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

William David Elkins
Elkins Law Office, LLC

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General

Raymond M. Larson
Commonwealth Attorney