# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 23, 2014
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2013-SC-000622-MR

DATE

BILLY GREER                                                                                    APPELLANT


ON APPEAL FROM MARSHALL CIRCUIT COURT
V.                     HONORABLE DENNIS FOUST, JUDGE
NO. 13-CR-00008


COMMONWEALTH OF KENTUCKY                                                    APPELLEE


## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Billy Greer, appeals as a matter of right, Ky. Const. § 110,

from a judgment entered by the Marshall Circuit Court convicting him of

murder and sentencing him to twenty years' imprisonment. Appellant raises

the following claims: (1) improper opinion testimony given during the course of

the trial deprived him of due process of law; and (2) reversible error occurred

when the trial judge did not submit defense counsel's proposed voluntary

intoxication instruction to the jury. For the following reasons, we affirm the

judgment of the Marshall Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Darryl Dominique and his wife, Carrie, drove to Appellant's residence one

afternoon to socialize and drink. After touring Appellant's property and

working on an ATV, the three continued to drink in Appellant's garage. At one

point in the afternoon, Carrie left the garage to go to the bathroom. When she

returned, Darryl and Appellant were scuffling on the floor. Carrie intervened and, seeing that Appellant was on the losing end of the fight, she yelled for Darryl to stop. The fighting then ceased, and Darryl followed Carrie toward his truck so that they could leave. Carrie went to the driver's side. As Darryl walked around to the passenger side, Appellant picked up a 12-gauge shotgun and fired it twice. The first shot hit Darryl in the leg; the second shot hit him in the chest, killing him immediately. Appellant was apprehended by police at the scene.

Appellant was charged with murder, and convicted. This appeal followed.

## II. IMPROPER OPINION TESTIMONY GIVEN DURING THE COURSE OF THE TRIAL DID NOT RISE TO THE LEVEL OF PALPABLE ERROR.

Appellant first argues that he was denied due process by the admission of improper opinion testimony. We begin by noting that this issue is not preserved. However, under KRE 103(e), we may review unpreserved claims of evidentiary error under the palpable error standard. "A palpable error in applying the Kentucky Rules of Evidence which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." KRE 103(e). "Authorities discussing palpable error consider it to be composed of two elements: obviousness and seriousness." *Ernst v. Commonwealth*, 160 S.W.3d 744, 759 (Ky. 2005). Thus, in order to find

2

palpable error, the record must reflect that the errors alleged were obvious and also that such errors resulted in a manifest injustice.

Specifically, Appellant argues that his right to due process was violated when Detective Dan Melone, a key witness for the Commonwealth, testified that: 1) Carrie's version of the incident was consistent with, and was corroborated by, other evidence; 2) Appellant's inconsistent testimony was typical of the sort of testimony given by dishonest persons; and 3) that narcotics officers investigated the scene of the shooting.

We agree that these aspects of Melone's testimony were improper. However, we are satisfied that, individually and collectively, they do not rise to a level resulting in manifest injustice. "To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky. 2006). In other words, when reviewing for manifest injustice, the court must discern whether there is a substantial possibility that, but for the error, the verdict would have been different or whether the error resulted in a fundamentally unfair trial. Otherwise, the unpreserved error will be held non-prejudicial. *Schoenbachler v. Commonwealth,* 95 S.W.3d 830, 836 (Ky. 2003).

With respect to Melone's improper opinion testimony concerning Carrie's veracity and Appellant's dishonesty, upon examination of the record as a whole, we do not find any substantial possibility that those aspects of Melone's testimony affected the outcome of the case. Even without Melone's improper

3

bolstering of Carrie's testimony and disparagement of Appellant's testimony, nevertheless, it was obvious that Appellant had changed his version of the events a number of times, ranging from not remembering the event at all to the shooting happening in the garage (which was entirely inconsistent with the physical evidence at the crime scene). Those inconsistencies could not have escaped the attention of the jury. Therefore, even without Melone's improper opinion testimony characterizing the testimony of Carrie and Appellant as, respectively, honest and dishonest, it was highly probable that the jury, based upon the properly admitted evidence, would have assigned more credence to Carrie's version of the events.

Appellant reminds us that in *Ordway v. Commonwealth*, 391 S.W.3d 762 (Ky. 2013), we reversed a murder conviction addressing substantially the same issue: the improper expression of opinion by a testifying police officer describing how guilty persons act after committing a crime. *Ordway*, however, is easily distinguished from the present case because that proceeding involved an error of improper opinion testimony that was properly preserved for appellate review, in combination with a viable allegation of self-defense. Where trial error is properly preserved for further review, a criminal conviction will be reversed unless the Commonwealth demonstrates that the error was harmless under *Winstead v. Commonwealth*, 283 S.W.3d 678, (Ky. 2009).[1] To the

---

[1] *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) ("A non-constitutional evidentiary error may be deemed harmless, the United States Supreme Court has explained, if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).")

contrary, where the error is *not* preserved, as here, the judgment will be affirmed upon appellate review unless the appellant establishes that the error is palpable. "Palpable error is much harder to find [than] harmful error and will rarely provide relief from a party's failure to properly preserve errors in offering and objecting to evidence." Robert G. Lawson, The Kentucky Evidence Law Handbook, § 1.10[7][b] (5th ed. 2013). We agree with Appellant that the admission of the testimony was error, but for the reasons already explained, we are satisfied that it does not meet the standard for palpable error.

Finally, Appellant also argues that Melone's reference to the presence of narcotics officers at the scene of the shooting resulted in a manifest injustice. Detective Melone testified that "[S]ome narcotics agents . . . came out to assist us in gathering evidence that I had found. They came out there and I asked them to bag things . . . ." However, there was no mention of any controlled substances being found at the scene, nor was there any further comment by the Commonwealth regarding drugs.

Although not mentioned in the testimony at Appellant's murder trial, illegal drugs were found upon Appellant's property when the shooting was investigated. Drug charges arising from that discovery were severed from the murder case for a separate trial. The parties agreed that evidence concerning the drug charges was not relevant to the murder charge.

We do not find that Detective Melone's improper reference to the presence of narcotics agents at the scene of the murder resulted in a manifest injustice. The single reference to narcotics officers was isolated and fleeting,

5

and was not otherwise emphasized by the Commonwealth in presenting its case against Appellant, and thus the error does not justify reversing the conviction.

In sum, nothing in the record indicates that these irregularities in the proceeding rose to the level of being "shocking or jurisprudentially intolerable." *Martin*, 207 S.W.3d at 3. Nor does the record reflect that these alleged defects substantially affected the outcome of the case. *Schoenbachler*, 95 S.W.3d at 836. Accordingly, we reject Appellant's argument that the introduction of Detective Melone's statements constituted palpable error.

## III. THE TRIAL COURT'S DECISION NOT TO TENDER A VOLUNTARY INTOXICATION INSTRUCTION WAS PROPER.

Finally, Appellant contends that reversible error occurred when the trial court refused to instruct the jury on the effect of voluntary intoxication. A trial court is required to instruct the jury on every theory that is reasonably deducible from the evidence. *Manning v. Commonwealth*, 23 S.W.3d 610, 615 (Ky. 2000). An instruction on voluntary intoxication is only warranted "where there is evidence reasonably sufficient to prove that the defendant was so drunk that he did not know what he was doing." *Harris v. Commonwealth*, 313 S.W.3d 40, 50 (Ky. 2010) (citations omitted). Mere drunkenness will not suffice; in order to receive an instruction on voluntary intoxication, there must be evidence sufficient to establish that the defendant was so drunk that he was incapable of forming the requisite *mens rea* for a specific intent crime. *Nichols v. Commonwealth*, 142 S.W.3d 683 (Ky. 2004).

Evidence at trial indicated that Appellant consumed "eight or nine beers" in approximately a four hour period on the day of the shooting. During that same period of time, Appellant was able to drive Carrie and Darryl around on his ATV; he was also able to discuss mechanical problems he was having with his ATV as he and Darryl worked to fix them. Police conducted an interview with Appellant a mere thirty minutes after the shooting and audio from this interview was played for the jury at trial. While the Appellant's speech on the tape is somewhat slurred, there is no doubt that his voice evinces a man still in possession of his faculties. Based upon the foregoing factors, the evidence does not support a reasonable belief that Appellant was so intoxicated that he lacked the ability to form the intent to commit murder.

It is well established that "although a trial judge has a duty to prepare and give instructions on the whole law of the case, including any lesser included offenses which are supported by the evidence, that duty does not require an instruction on a theory with no evidentiary foundation." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998) (citations omitted). Here there was an insufficient evidentiary foundation to support a voluntary intoxication instruction, and so the trial court properly denied Appellant's request for a voluntary intoxication instruction.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the judgment of the Marshall Circuit Court.

All sitting. All concur.

7

COUNSEL FOR APPELLANT:

Samuel N. Potter
Department Of Public Advocacy
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General Of Kentucky

James Coleman Shackelford
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General