**Erick VEGA, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2012–SC–000111–DG.**

Supreme Court of Kentucky.

Oct. 24, 2013.

As Modified on Denial of Rehearing Feb. 20, 2014.

Amy Rebecca Duncliffe, Georgetown, for appellant.

Jack Conway, Attorney General, Carlos Aundra Ross, Special Assistant Attorney General, Larry S. Roberts, Fayette County Attorney, for appellee.

Opinion of the Court by Justice CUNNINGHAM.

Late on the night of January 9, 2010, Appellant, Erik Vega, was pulled over by Officer Thomas Perkins of the Lexington Metro Police Department. Officer Perkins stopped Appellant because one of the headlights on his vehicle, as well as the rear license plate, was not illuminated. Officer Perkins noticed nothing out of the ordinary as he obtained Appellant's driver's license and registration from the front driver's side window. Another Lexington police officer, Reed Bowles, arrived on the scene shortly thereafter. Officer Bowles approached Appellant's vehicle from the passenger's side. After shining his flashlight into the front passenger's window, Officer Bowles noticed the barrel of a gun protruding from underneath a toolbox sitting on the front passenger's seat. Officer Bowles informed Officer Perkins of the weapon's presence, at which point Appellant was asked to exit his vehicle. Officer Bowles recovered a loaded Ruger .40 caliber pistol from Appellant's vehicle. Officer Perkins then placed Appellant under arrest for carrying a concealed deadly weapon. A search incident to the arrest uncovered one Lorcet pill in Appellant's pocket. Appellant also confessed that one-half of a Lortab pill was located in his shoe.

On March 15, 2010, Appellant entered a conditional guilty plea in the Fayette District Court to two counts of second-degree possession of a controlled substance and one count of carrying a concealed deadly weapon. Appellant received a sentence of 180 days imprisonment, with 10 days to be served and remainder probated for two years, in addition to a $250 fine and forfeiture of his weapon. Within Appellant's guilty plea, he reserved the right to appeal the Fayette District Court's denial of his motion to suppress the evidence seized upon his arrest. It is from this denial that Appellant appealed to the Fayette Circuit Court and the Court of Appeals, both of which affirmed the district court's ruling. We granted discretionary review.

We begin our analysis by stating what this case is not. It is not a determination by this Court as to whether the weapon spotted by Officer Bowles was concealed. It is not a review of a motion to dismiss or a motion for a directed verdict due to insufficient evidence. Even so, the majority of Appellant's brief focuses on whether the apparent concealment of his gun constitutes a violation of KRS 527.020. We will not address the merits of that issue. The procedural posture in which this case comes before us is the correctness of the district court's denial of Appellant's motion to suppress, not the ultimate determina-

tion of guilt. If there was not sufficient cause to arrest Appellant, then the search of his person was not incident to a lawful arrest and any evidence obtained from the search should have been suppressed as fruit of the poisonous tree.

■ We utilize a two-step process when reviewing a trial court's suppression motion ruling. *E.g., Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998) (citing *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). First, we must determine whether the factual findings of the trial court are supported by substantial evidence. *Id.* (citing RCr 9.78). If the factual findings are not clearly erroneous, then we must conduct a de novo review of the trial court's application of the law to the facts. *Id.*

The district court's ruling denying Appellant's motion to suppress was made on the record at the conclusion of the suppression hearing. The district court failed to render a written order of its findings of fact and conclusions of law. Fortunately, we believe that we can accurately determine the basis for the trial court's ruling from the suppression hearing record. *See Coleman v. Commonwealth,* 100 S.W.3d 745, 749 (Ky.2002) (stating that evidence offered at the suppression hearing, in conjunction with the trial judge's oral comments, provided sufficient insight into the court's findings of fact).

After a thorough review of the suppression hearing testimony of both Officer Perkins and Officer Bowles, the basic material facts are as follows: (1) Appellant's gun was underneath a toolbox in the front passenger's seat of his vehicle; (2) the toolbox was resting on the gun so as to cause the toolbox to slant downwards towards the driver's side of the vehicle, but raised slightly enough to allow a portion of the gun to be noticeable from the passenger's

side of the vehicle; (3) Officer Perkins failed to notice the weapon from his vantage point at the driver's side of the vehicle; and (4) Officer Bowles noticed the gun only after shining his flashlight into the window well of the front passenger's side of the vehicle. Based on these facts, we believe the district court had a substantial factual basis to support its ruling.

■ A de novo review of the law, as applied to the aforementioned facts, further supports the trial court's ruling. The sole issue of law is whether Officer Perkins had probable cause to arrest Appellant. KRS 431.005(1)(d) authorizes a police officer to arrest a person "[w]ithout a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his or her presence." In order to determine whether Officer Perkins had probable cause to believe that Appellant had committed a misdemeanor offense, "we must examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Ornelas,* 517 U.S. at 696, 116 S.Ct. 1657). In other words, would a reasonable officer conclude from the present facts that Appellant was carrying a concealed deadly weapon?

■ The offense of carrying a concealed deadly weapon occurs when one "carries concealed a firearm or other deadly weapon on or about his person." KRS 527.020(1). Our case law has interpreted the word "carry," as the term is used within the statute, as occurring when the weapon is "on the person or so connected or annexed to the person that the weapon is carried along as the person moves." *Avery v. Commonwealth,* 223 Ky. 248, 3 S.W.2d 624, 626 (1928). We have no statu-

tory definition of "concealed" which would guide an officer on the street in determining probable cause. Again, our case law speaks. Concealment occurs when the weapon is not "observed by persons making ordinary contact with him in associations such as are common in the everyday walks of life." *Id.*

This concept of what is "concealed" gives way to such broad interpretation which allows for a police officer on the beat and acting in an instant to be given the benefit of the doubt as to his or her belief. We believe that a reasonable police officer in Officer Perkins' position would have concluded that Appellant was concealing the weapon. Our conclusion is based primarily on the fact that the gun was placed underneath the toolbox in such a way that it could not be seen by Officer Perkins. It is reasonable to assume that the weapon was not observable to those with whom Appellant would have come into "ordinary contact." This expansive array of encounters includes a multitude of possibilities such as banking services at drive-through banks, prescriptions at drive-through pharmacies, food or drink at fast food restaurants, coffee at drive-through coffee shops, alcohol at drive-through liquor stores, and, of course, traffic stops by police officers. Consequently, an objectively reasonable police officer would have believed there was probable cause to arrest Appellant for carrying a concealed deadly weapon. We emphasize again that whether there was sufficient evidence based on Officer Bowles' observation to carry this case to the jury is a

determination that must await another day.

Accordingly, we find that the search and ultimate seizure of the gun and the controlled substances found on Appellant's person was a valid search incident to arrest, and the Fayette District Court's denial of Appellant's motion to suppress is hereby affirmed.

MINTON, C.J.; ABRAMSON and NOBLE, JJ., concur. SCOTT, J. dissents by separate opinion in which VENTERS, J., joins. KELLER, J., not sitting.

SCOTT, J., dissenting.

I must respectfully dissent from my colleagues' viewpoint in this case as I disagree with the underlying assumption that a weapon may be visible, or "in plain view," yet still be "concealed" for purposes of KRS 527.020(1). In fact, "there is no support for the conclusion that a weapon may be in plain view and concealed at the same time." *State v. Potts*, No. 97–T–0038, 1998 WL 684158, at *2 (Ohio Ct.App. Sept. 25, 1998). *Potts* involved the tip of a knife sticking out from between the driver's seat and the console which was observed by the officer from the unoccupied passenger's side. *Id.* at *1.

However one may want to parse the facts in this case, the weapon here was immediately recognized by Officer Bowles as such as soon as he pointed his flashlight into the unoccupied front passenger's seat.[1] The facts being what they actually

---

1. Although the trial judge made no factual findings concerning her overruling of the defendant's suppression motion, the evidence is clear that the barrel of the pistol (with its front sight on the terminal end of the barrel) was clearly visible and recognizable to Officer Bowles as a gun as soon as he approached the passenger's side and immediately looked down on the unoccupied passenger's seat.

Specifically, he testified he did not need to even open the door to see it and know what it was. Moreover, this semi-automatic pistol had *no shell* in the chamber and, thus, it would have had to have been grasped and the slide then pulled back to inject a bullet into the chamber for firing—an impossible task under these circumstances—had the occupant wanted to use it.

were at that moment, such facts do not support any "objectively reasonable" belief the weapon was concealed.[2] *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

Given that Kentucky recognizes a citizen's right to lawfully conceal a weapon in his or her vehicle's glove box, center console, or even in an "out of view" seat pocket, KRS 527.020(8), I see nothing but disadvantages to stretching these facts to the point of making a "plainly seen" and "plainly visible" weapon a "concealed weapon" for purposes of "probable cause" under KRS 527.020(1). What I fear this decision will lead to is a scary practice of people driving around in public places with their weapons laid out on their dashboards for extreme visibility purposes—quite an unnerving sight for a lot of families and viewers in this day and age.

Thus, I dissent.

VENTERS, J., joins.

2. Officer Perkins testified that it was around 11 p.m., he had his flashlight with him, his cruiser's headlights and emergency lights were on, and, as trained, he was solely focused on the occupant to whom he was speaking. When Officer Bowles arrived by separate vehicle, Perkins was already on the driver's side—with the driver between him and the passenger's seat. Perkins *could not testify* that he looked in the passenger's seat.