LAMBERT, J., JUDGE:
Jonathan Tyler Sykes has directly appealed from the portion of the Fayette Circuit Court's judgment convicting him of carrying a concealed deadly weapon. He contends that the Commonwealth failed in its burden to prove that the weapon was concealed. We affirm.
Sykes was arrested by Lexington Police Officer Blake Leathers on May 7, 2016, and charged with carrying a concealed deadly weapon, trafficking in marijuana less than 8 ounces second offense, resisting arrest, and possession of drug paraphernalia. The officer described the circumstances preceding the arrest as follows:
Officers were dispatched to listed area [Robertson Street at Speigle Street] in reference to a shots fired call. On arrival I observed the listed vehicle [a 2009 white Impala] running on the side of the road. I approached the vehicle & the subj rolled down the window & I smelled a very strong odor of burnt marijuana coming from inside the vehicle. I ordered the subj out of the vehicle. Once out of the vehicle the subject *62 raised his arms & ofcs observed a concealed firearm in his waistband. While attempting to arrest the subj he began resisting & pulling away. Ofcs searched the veh. and located approximately 3.273 ounces of susp marijuana. Ofcs also located a cigarillo & a blunt roller. An additional firearm was located in the trunk. Subj had over $3,000 in cash on his person & the marijuana was in industrial sealed packaging.
The Fayette County grand jury indicted him on the same charges in a four-count indictment in August 2016, and Sykes entered a plea of not guilty.
The matter was tried before a jury in March 2017. Detective Leathers of the Lexington Police Department testified that in May 2016, he was serving as a patrol officer on the west side of Lexington in the Versailles Road area. On the evening of May 7, 2016, he was dispatched with his beat partner, Officer (now Detective) Matt Laney, to 400 Robertson Street. He described seeing and approaching Sykes' vehicle, his attempts to get Sykes' attention, the marijuana odor emanating from the vehicle once Sykes opened the window, and getting Sykes to exit the vehicle. Once he exited the vehicle, Sykes became angry and started yelling. Sykes raised both of his hands in the air, at which time Detective Laney observed a firearm in his waistband and reached out to retrieve it. Later, Detective Leathers confirmed that "once his shirt came up over the gun," the firearm became apparent.
Detective Leathers grabbed Sykes' hands to handcuff him, and Sykes began to resist. Sykes was not compliant as they were trying to handcuff him and retrieve the firearm. Once the firearm was secured, and the officers had handcuffed Sykes, they informed Sykes of his rights and performed a search. Detective Leathers found in excess of $3,000.00 in cash in different denominations in Sykes' pocket. The semi-automatic handgun the officers retrieved from Sykes' waistband had nine live rounds in it, with one in the chamber. Other items Detective Leathers seized included multiple cell phones, suspected marijuana, a blunt, and a cigarillo.
Detective Laney testified in conformity with Detective Leathers' version of the events. He saw the firearm in Sykes' waistband when he raised his second arm after he had exited the car (he was still talking on his cell phone with his other hand). Detective Laney immediately retrieved the weapon and removed the ammunition, and he seized several items of evidence from his search of the interior and trunk of Sykes' vehicle.
At the conclusion of the testimony, the court denied Sykes' motion for a directed verdict, and the matter proceeded to the jury after closing arguments. The jury returned a verdict finding Sykes guilty of carrying a concealed deadly weapon under Count 2, not guilty of resisting arrest under Count 3, and guilty of possession of drug paraphernalia under Count 4. The jury was hung on the trafficking in marijuana charge under Count 1, and the parties reached an agreement related to that charge. Pursuant to that agreement, Sykes moved to enter an Alford plea[1] on an amended charge of criminal attempt to trafficking in marijuana, less than 8 ounces, second offense. Sykes waived sentencing by the jury, and the court fixed his sentences at twelve months on Counts 1 and 2, and seven days on Count 4. The court ordered the forfeiture of items seized. By agreement of the parties, the forfeited items included the firearms, ammunition, drugs, and drug paraphernalia. The cash was to be returned to Sykes.
*63 The court held a sentencing hearing the following month and entered a final judgment and sentence of probation on May 2, 2017. The court imposed a twelve-month concurrent sentence for the charges on which Sykes was convicted and placed him on probation for two years subject to several conditions. This appeal now follows.
On appeal, Sykes seeks review of the circuit court's denial of his directed verdict motion on the charge of carrying a concealed deadly weapon.
On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.
Perdue v. Commonwealth , 411 S.W.3d 786, 790 (Ky. App. 2013), citing Commonwealth v. Benham , 816 S.W.2d 186, 187 (Ky. 1991). "To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.' " Lackey v. Commonwealth , 468 S.W.3d 348, 352 (Ky. 2015), quoting Benham , 816 S.W.2d at 187.
Sykes admits in his brief he did not fully preserve this issue due to lack of specificity because he did not argue that the Commonwealth failed to establish the element of concealment. He therefore seeks palpable error review pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26 to the extent the issue is not preserved. In Schoenbachler v. Commonwealth , 95 S.W.3d 830, 836 (Ky. 2003), the Supreme Court defined a review for palpable error as follows:
A palpable error is one of that "affects the substantial rights of a party" and will result in "manifest injustice" if not considered by the court, and "[w]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."
(Footnotes omitted.) Sykes contends that it would be manifestly unjust to be convicted of a crime he claims he did not commit, citing to Schoenbachler, supra . However, the Commonwealth aptly points out that the Supreme Court of Kentucky rejected the interpretation of dictum in Schoenbachler on which Sykes relies:
Appellant interprets dictum in Schoenbachler ... to mean that a failure by the Commonwealth to present sufficient evidence to support a criminal conviction always constitutes palpable error. Id. at 836-37. Our cases, however, are replete with affirmances of convictions where unpreserved errors pertained to the Commonwealth's failure to prove an element of the offense.
Potts v. Commonwealth , 172 S.W.3d 345, 348 (Ky. 2005) (footnote omitted).
Turning to the case before us, Kentucky Revised Statutes (KRS) 527.020(1) provides that "[a] person is guilty of carrying a concealed weapon when he or she carries concealed a firearm or other deadly weapon on or about his or her person." In *64 Vega v. Commonwealth , 435 S.W.3d 621, 623-24 (Ky. 2013), cited by Sykes, the Supreme Court of Kentucky discussed the term "concealed," observing:
We have no statutory definition of "concealed" which would guide an officer on the street in determining probable cause. Again, our case law speaks. Concealment occurs when the weapon is not "observed by persons making ordinary contact with him in associations such as are common in the everyday walks of life." [ Avery v. Commonwealth , 223 Ky. 248, 3 S.W.2d 624, 626 (1928) ].
Sykes also cites to Prince v. Commonwealth , 277 S.W.2d 470, 472 (Ky. 1955), in which the former Court of Appeals stated,
In 56 Am.Jur., Weapons and Firearms , Section 10, it is said: '* * * a weapon is generally held to be concealed when so placed that it cannot be readily seen under ordinary observation.' ... [O]rdinary observation in such a case as this means the weapon must be open to ordinary observation to those who may come in contact in the usual and ordinary associations with one carrying the weapon. We believe that this was a case for the jury. Franklin v. Commonwealth , 195 Ky. 737, 244 S.W. 299 [ (1922) ].
In addition to these cases, we have reviewed the cases cited by the Commonwealth in its brief and agree with its summation of the law as set forth in those cases:
Kentucky's courts have defined concealment in an open-ended manner-"[A] weapon is generally held to be concealed when so placed that it cannot be readily seen under ordinary observation." Prince v. Com. , 277 S.W.2d 470, 472 (Ky. 1955). Precedent consistently indicates that the Commonwealth's evidentiary burden on concealment is low. If the evidence permits a reasonable jury to infer that the firearm was concealed at any point, then the Commonwealth has met its evidentiary burden to have the matter submitted to the jury. Delk v. Com. , 344 S.W.2d 832 (Ky. 1961). The Commonwealth is not required to have a witness directly testify that the firearm was concealed. Shoupe v. Com. , 304 Ky. 737, 202 S.W.2d 369, 370 (1947). Whether the defendant intended to conceal the weapon is completely irrelevant. Hall v. Com. , 309 Ky. 74, 215 S.W.2d 840, 841 (1948).
Sykes argues that the firearm could not have been concealed because there was no testimony that he had hidden it from anyone, the officers saw the gun as soon as he got out of the car and faced them, and the officers could see it sticking out of his waistband. However, our review of the testimony in question establishes that Sykes has omitted important details from his brief. Namely, both officers testified that the firearm was under his shirt and was not visible until Sykes held his arms up after he had exited the vehicle. Neither officer saw the firearm when Sykes got out of the vehicle; rather, it was not until his shirt was raised that the officers were able to see it tucked into the waistband of his pants. Whether the firearm was concealed in this case was certainly a factual question for the jury to decide. Shoupe , 202 S.W.2d at 370. Therefore, we find no error or any manifest injustice resulting in palpable error based upon the circuit court's decision not to direct a verdict of acquittal on the carrying a concealed deadly weapon charge.
For the foregoing reasons, the judgment of conviction by the Fayette Circuit Court is affirmed.
ALL CONCUR.

North Carolina v. Alford , 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).